**STATE of Iowa, Appellee,**

v.

**Darrell Dean OPPEDAL, Appellant.**

No. 57678.

Supreme Court of Iowa.

Aug. 29, 1975.

Scalise, Scism, Gentry, Brick & Brick, and John R. Sandre, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Earl W. Roberts, Asst. Atty. Gen., and Ray Fenton, County Atty., Des Moines, for appellee.

Heard by REYNOLDSON, Acting C. J., and RAWLINGS, REES, UHLENHOPP and HARRIS, JJ.

REES, Justice.

Defendant, charged by county attorney's information with the crime of possession of a controlled substance, to-wit, marijuana, with intent to deliver in violation of section 204.401(1), The Code, 1963, pleaded not guilty, was tried to a jury, convicted, sentenced and now appeals. We reverse and remand for new trial.

During the early afternoon of March 27, 1974 Officers Johnson, Leitzke and Pomeroy of the Metropolitan Area Narcotics Squad of Des Moines were conducting a warranted search of an apartment at 1618 East Twelfth Street in Des Moines. The apartment was shared by defendant, Randy Smith and possibly a third person, and defendant was present at the time of the search. The officers discovered and seized in the apartment eight small cellophane

bags containing a green plant-like substance which they located in a closet off the living room. They also seized a list of names and phone numbers, some of whom Officer Leitzke was familiar with through his work as a narcotics officer, a quantity of cellophane baggies, a scale, a container of seeds and green plant-like substance, a white sack containing stems and stalks, and some lollipop suckers. Shortly after the officers entered into the process of conducting the search, they placed Oppedal under arrest and informed him of his constitutional rights by giving him what is commonly referred to as the "Miranda warnings". Officer Leitzke then pointed to the box containing the eight small bags of marijuana and asked Oppedal, "Do you sell these things?", to which question defendant answered in the affirmative.

The Oppedal apartment was on the second level of the apartment house. While the officers were in the apartment and continuing their search, and about 45 minutes after they had arrived at the apartment, they heard a knock at the outside door on the first level. Oppedal started to answer the door, but was told by Officer Pomeroy that he, Pomeroy, would do so. Pomeroy then saw a van outside the house and a person later identified as Rickey Hilker, who was at the door carrying a brown paper sack. Hilker asked Pomeroy, "Is Darrell here?" and Pomeroy then said, "He's upstairs". Hilker was then admitted and proceeded upstairs to the door of the Oppedal apartment. As he reached the top of the stairway, Officer Johnson stopped him and advised him that he had walked into a search warrant, and asked Hilker what was in the paper sack. Officer Johnson testified that at this time he could see into the sack and observed what appeared to be a quantity of marijuana. Hilker was placed under arrest and the sack was then found to contain three plastic bags, each containing a pound of a green plant-like substance. Samples of the substance found in the closet in Oppedal's apartment, and also of that found in Hilker's grocery sack,

were tested by the State Criminalistics Laboratory and analyzed as marijuana.

Prior to trial defendant filed what he characterized as a motion in limine, seeking exclusion of police testimony regarding the three one-pound bags of marijuana seized from Hilker just outside the door of defendant's apartment, and to further limit any expert testimony on the inference of intent based on the quantity of marijuana found. Trial court properly treated the motion in limine as a motion to suppress insofar as it asked exclusion of physical evidence resulting from the claimed illegal search and the testimony relating to the evidence. The parties stipulated that the facts pertinent to that part of the motion would be the transcript of evidence in the hearing before Judge Critelli in the case against Hilker in which case the evidence was suppressed. The motion in the instant case was overruled in its entirety, based upon the court's conclusion defendant had no standing to object to the admission of the evidence.

Defendant states the following issues for review which he contends require reversal:

(1) Trial court erred in admitting over defendant's objection testimony and evidence relating to three pounds of alleged marijuana seized from a Mr. Rickey Hilker at some point outside of the defendant's apartment.

(2) Trial court erred in denying the defendant's standing to object on illegal search and seizure grounds to the introduction of the three pounds of alleged marijuana seized from Rickey Hilker.

(3) Trial court erred in permitting a witness to testify that a quantity of marijuana seized from the defendant's apartment was possessed with intent to deliver; and

(4) Trial court erred in retaining in evidence, untested and unexamined, alleged contraband when the representative sample thereof had been withdrawn from evidence.

I. As stated above, trial court admitted in evidence the three pounds of marijuana which was seized from Rickey Hilker as he

approached the door of defendant's apartment while a warranted search was being conducted in the apartment. Defendant claims the State failed to establish any connection between the three pounds of marijuana seized from Hilker and the crime with which the defendant was charged, and argues that the introduction of such evidence tended to confuse and excite the prejudice of the jury. The State contends the Hilker marijuana was admissible as a part of the "*res gestae* of the search and arrest".

■ The admissibility of such evidence is largely within the discretion of the trial court. *State v. Harper*, 222 N.W.2d 450, 452 (Iowa 1974); *State v. Wilson*, 173 N.W.2d 563, 566 (Iowa 1970). So is the question of the relevancy of such evidence. *State v. Harper, supra; State v. Battle,* 199 N.W.2d 70, 72 (Iowa 1972). We have not, however, hesitated to reverse when the jury was allowed to consider plainly irrelevant and prejudicial evidence. *State v. Harper, supra; State v. Lelchook*, 186 N.W.2d 655, 657 (Iowa 1971); *State v. Armstrong*, 183 N.W.2d 205, 209 (Iowa 1971), (cert. den. 414 U.S. 857, 94 S.Ct. 163, 38 L.Ed.2d 108).

■ We have held, with notable exceptions, that evidence of the commission of crimes other than the one with which defendant is presently charged, is inadmissible. *State v. Fetters*, 202 N.W.2d 84, 91–92 (Iowa 1972); *State v. Wright*, 191 N.W.2d 638, 639–640 (Iowa 1971). In the instant case, however, there is involved the admission of evidence of the crime of another person committed contemporaneously with the commission of the crime with which the defendant here is charged.

Defendant cites a line of cases in which this court has reversed criminal convictions where the relevancy of admitted evidence to the specific crime charged has been tenuous or nonexistent. He cites *State v. McCarty*, 179 N.W.2d 548 (Iowa 1970) which involved the prosecution of a defendant for larceny of a quantity of soybeans. In *McCarty*, we held that evidence relating to the commercial transactions in soybeans of a brother of the defendant prior to the larceny with which defendant was charged allowed prejudicial speculation by the jury as to the connection between the sales by the brother and the offense with which the defendant was charged, and held that such evidence should have been excluded. We there noted the State was obviously attempting to connect the sales by the defendant's brother with the alleged offense by showing that the amount of soybeans subject to sale was more than the defendant and his brother could have raised or accumulated without having come into their possession in some manner unexplained. In *State v. McHenry*, 207 Iowa 760, 223 N.W. 535, which involved a prosecution for possession of burglar tools, trial court admitted, as evidence of intent, a sack of pennies seized with the tools in a search of defendant's house. At page 539 of 223 N.W., we said:

> "Many other things were found by the sheriff in his search, among which is what is known in the record as Exhibit BBBB, a money sack with some small change in it. * * * It was not shown or intimated in any of the testimony that this sack was in any way connected with the Alleman Bank robbery, * * *."

See also the following cases cited by defendant, viz.: *State v. Wright*, 203 N.W.2d 247 (Iowa 1972); *State v. Gill*, 259 Iowa 142, 143 N.W.2d 331, in both of which we held evidence of unrelated crimes and general bad conduct to be inadmissible.

Defendant here was charged with the possession of eight baggies of marijuana, a controlled substance. The State did not attempt to charge defendant with possession of the three pounds of marijuana seized from Rickey Hilker. In fact, the State has argued that defendant had no possessory interest in the drug seized from Hilker sufficient to allow him standing to contest its admission to trial. In the absence of any other justification, therefore, the rule enunciated by us in *McCarty, supra*, would not permit the admission of

the marijuana seized from Hilker as the same would be prejudicial, speculative and incapable of affording any reasonable presumption or inference as to the principal matter in dispute, the possession of the eight baggies of contraband marijuana seized in the defendant's apartment.

Inversely, the State insists evidence concerning the marijuana seized from Hilker was properly admissible as a part of the *res gestae* of the search and arrest of the defendant.

The penumbra of vagueness and impreciseness which surrounds the term *res gestae* impels us to analyze the State's contention in this regard with some exactness. The concept of *res gestae* has been used broadly by courts to justify the admission of a wide range of evidence, yet its parameters may be at least approximately defined. A general statement is found at 22A C.J.S. Criminal Law § 669, pp. 686–687:

> "Statements and conduct of accused at the time of the commission of the offense are part of the transaction itself and may be admissible as res gestae, although they may have a tendency to inflame the minds of the jury,  *  *  *."

See also 29 Am.Jur.2d, Evidence, § 713, p. 775, at which we find:

> "It is well settled that the term 'res gestae' includes all those acts and circumstances which are incidents of a particular litigated act  *  *  *."

In McCormick on Evidence, 2d Ed., § 288, pp. 686–687, appears the following:

> "Initially, the term *res gestae* was employed to denote words which accompanied the principal litigated fact, such as the murder, collision, or trespass, which was the subject of the action. Usage developed, however, to the point where the phrase seemed to embody the notion that evidence of any concededly relevant act or condition might bring in likewise the words which accompanied it. Two main policies or motives are discernible in this recognition of *res gestae* as the pass-

word for the admission of otherwise inadmissible evidence. One is the desire to permit each witness to tell his story in a natural way by telling all that happened at the time of the narrated incident, including those details which give life and color to the story. Truth is a seamless web, and the naturalness with which the details fit each other gives confirmation to the witness' entire account. The other policy, emphasized by Wigmore and those following his leadership, is the recognition of spontaneity as the source of special trustworthiness."

An exception to the general rule of inadmissibility of evidence of the commission of crimes other than the one with which the defendant is charged is explained in 1 Wigmore, § 218, p. 719:

> "There is, however, an additional class of cases in which the misconduct of a defendant may be received, irrespective of any bearing on character, and yet not as evidential of one of the above matters [design, motive, or the like], or as relevant to any particular subsidiary proposition. That class includes *other criminal acts which are an inseparable part of the whole deed*."

Further, at p. 722 of Wigmore, it is observed that although this notion is quite similar to *res gestae*, legal authorities are not wholly satisfied with this characterization:

> "Let it be said that such acts [are] receivable as 'necessary parts of the proof of an entire deed', or 'inseparable elements of the deed', or 'concomitant parts of the criminal act', or anything else that carries its own reasoning and definition with it;  but let legal discussion sedulously avoid this much-abused and wholly unmanageable Latin phrase."

We have approved a *res gestae* rule in a long line of cases.  In *State v. Robinson*, 170 Iowa 267, 152 N.W. 590 [a prosecution for rape] the trial court permitted testimony by the prosecutrix that cohorts of the defendant had also raped her throughout

the evening of the alleged offense. In commenting upon the admissibility of such evidence, we said,

"The general rule is that the state is not permitted, in its efforts to establish the crime charged, to introduce evidence of another substantive offense, but the rule is that, where the acts are all so closely related, in point of time and place, and so intimately associated with each other that they form one continuous transaction, the whole transaction may be shown—what immediately preceded and what immediately followed the act complained of—for the purpose of showing the scienter or quo animo of the party charged."

152 N.W. at p. 593. See also *State v. Holoubek*, 246 Iowa 109, 113, 66 N.W.2d 861, 863, a strikingly similar case, for the continuing vitality of the rule announced in *Robinson*. We have also followed the rule in *Robinson* without reference to scienter and quo animo, implying we have extended somewhat the allowance of admission of acts so intimately associated with each other that they form one continuous transaction. See *State v. Rand*, 238 Iowa 250, 25 N.W.2d 800; *State v. Lyons*, 210 N.W.2d 543 (Iowa 1973). In *Lyons, supra*, at p. 546, we analyzed with some care the doctrine of *res gestae* and the Wigmore rule set out above regarding criminal acts which are inseparable parts of the whole deed and concluded:

"Succinctly stated, the question appears to be whether the acts and statements of the defendant are integral parts of the crime with which he is charged, or whether they are unrelated in time and space, and to the parties involved."

In *State v. Drake*, 219 N.W.2d 492 (Iowa 1974), we affirmed a trial court in admitting testimony by the prosecutrix in a statutory rape case regarding the force and violence with which defendant perpetrated the alleged act, although such force and violence are not elements of the crime of statutory rape. In quoting *Lyons* with approval, we said at p. 494, "The State is always entitled to show what actually happened at the time of the offense. The fact that this may necessarily include recitation of the commission of another crime or other unfavorable circumstances does not render such evidence inadmissible." See also *State v. Garren*, 220 N.W.2d 898 (Iowa 1974); *State v. Guess*, 223 N.W.2d 214 (Iowa 1974).

This court has applied another variation of the *res gestae* doctrine under which evidence of another offense is admissible "where it is so related to the offense charged that proof of the former tends to establish the latter, also where such evidence tends to identify the accused as the person who committed the crime charged." *State v. Dunne*, 234 Iowa 1185, 1195, 15 N.W.2d 296, 301–302. See also *State v. Fetters, supra*; *State v. Johnson*, 224 N.W.2d 617 (Iowa 1974).

While not factually similar, we have also held that circumstances attendant upon crime connected flight and arrest are ordinarily admissible in evidence, although having no connection with the actual commission of the offense charged. *State v. Wilson*, 173 N.W.2d 563, 565 (Iowa 1970), and citations.

We are invited by the State to apply the doctrine of *res gestae* to validate the admission of evidence illegally seized from Hilker. As such evidence tends to be not merely irrelevant, but tends to show other crimes or misconduct on the part of the defendant, we subject it to closer scrutiny. See *State v. Lyons, supra*, at p. 546.

Such closer scrutiny impels us to reject the State's invitation. To hold the three pounds of marijuana seized from Hilker and all evidence surrounding its seizure to be properly admissible here would be to allow an extension of the *res gestae* doctrine and raise serious questions of guilt by association in this case.

In prior cases in which this court has permitted the admission of evidence under the *res gestae* doctrine, the evidence has been related to the defendant directly, by

virtue of the fact the acts done or statements made have been by the defendant himself, or indirectly, where the defendant and another have acted in concert against one victim. In such cases, we have been able to find from the record the acts and statements of the defendant were integral parts of the crime with which he was charged, as in *Lyons*, or at least so closely related in point of time and place and so intimately associated with each other they form a continuous transaction, the whole of which may be shown, as in *Holoubek*.

The State in this case made no attempt to show Hilker's possession of the three pounds of marijuana was an integral part of the defendant's crime of possession of eight baggies of a controlled substance with intent to deliver. The defendant had been placed under arrest at the time of the seizure of the marijuana from Hilker, and the record fails to disclose any contact between the two with respect to the larger quantity of marijuana seized from the latter.

The State bases its argument for admission of the Hilker marijuana upon the proximity of the search of Hilker to the defendant's apartment, the fact that the seizure from Hilker was substantially simultaneous with the search of defendant's apartment, and from the fact that Hilker had announced his intention to visit the defendant. Certainly these facts tend to show a relationship between Hilker and the defendant, but it is clear the officers intervened before Hilker's possession and the defendant's possession with intent to deliver became so closely related and ultimately associated with one another that they could form a continuous transaction. We would have to engage in conjecture and speculation in order to so find.

In *State v. Harper, supra*, we considered a similar question. There defendant was charged with bootlegging, and the State introduced testimony defendant had served an undercover agent two cans of beer at a residence fitted up inside to resemble a cafe. Over defendant's objections the State also introduced in evidence two cans of beer

sold to the undercover agent at the same residence later the same day but by a person other than the defendant. We held the evidence of the latter sale inadmissible, declaring it fit no exception to the general rule against the admission of evidence concerning other crimes. Characterizing the exception in *Holoubek* as providing a justification for admission only where the other criminal act is an inseparable part of the whole deed and the separate offenses are so related that proof of one tends to establish the other, we said at p. 453:

> "Applying those criteria to the case *sub judice*, it is plain the two beer-can exhibits, secured in a separate purchase from a third person, do not constitute evidence falling within the exception relied on by the State. This record is devoid of proof defendant was the proprietor of the premises, custodian or owner of the beer sold by Shorty, or that the latter was the agent or employee of defendant. No conspiracy between them was charged. Shorty's sale to Washington was not an inseparable part of defendant's alleged 'keeping,' possession, or sale. Nor did proof of Shorty's sale tend to establish defendant's 'keeping,' possession, or control of the beer with intent to sell or dispose of it. * * * These exhibits went to the jury as mute proof of an unrelated offense committed by another. Ordinarily, evidence of a third person's crime is not relevant to the issue of the guilt of the accused."

Similarly, Hilker's possession of the three pounds of marijuana does not tend to establish defendant's possession of the eight baggies of controlled substance with intent to deliver. No conspiracy between Hilker and defendant was charged, and the State did not attempt to prove any substantial link between Hilker's marijuana and the defendant. Rather, the State merely introduced evidence of the seizure from Hilker and implicitly invited the jury to speculate upon its relevance to the guilt of the defendant.

We have long recognized evidence of other crimes is admissible to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the person charged with the commission of the crime. *State v. Garren, supra,* 220 N.W.2d at 900; *State v. Mullen,* 216 N.W.2d 375, 379 (Iowa 1974); *State v. Wright, supra,* 191 N.W.2d at 639–640; *State v. Armstrong, supra,* 183 N.W.2d at 207. The State, however, offers no argument here that the marijuana taken from Hilker falls within any of the above exceptions to the general prohibition against the introduction of evidence showing commission of crimes other than the one for which defendant stands charged.

We must therefore conclude and hold trial court erred in admitting into evidence the marijuana seized from Hilker and any testimony of the officers incident to its seizure. Such error necessitates a reversal and remand of this case for a new trial.

■ II. We next consider defendant's contention trial court erred in permitting the witness Leitzke to testify that a quantity of marijuana seized from defendant's apartment was possessed by defendant with the intent to deliver.

After Officer Leitzke had testified to finding eight one-ounce baggies of alleged marijuana in defendant's apartment, together with other items such as the box of baggies and the scale, he was asked, based upon his experience as an operative in the narcotics enforcement field, if he had an opinion whether the marijuana seized from defendant was possessed for personal use. Counsel for defendant objected to the question on the basis that it called for an opinion and conclusion of the witness and that an inadequate foundation had been laid establishing his qualification as an expert in the field. Defendant's counsel did not object to the question on the ground that intent to sell is an improper subject for expert testimony, but on appeal he urges this ground as a basis for reversal. The objections to the questions posed were not adequate to preserve the claimed error for appeal.

In view of our reversal of this case and the likelihood of retrial, we note the pronouncements of this court in *State v. Lynch,* 197 N.W.2d 186, 190 (Iowa 1972) and *State v. Boyd,* 224 N.W.2d 609, 613 (Iowa 1974) seem to be pertinent to this question. In *Lynch, supra,* at page 190, we said:

> "The testimony objected to was based on the agent's experience in narcotics investigations and described in some detail the manner in which marijuana is measured out and packaged for resale purposes. From this description the jury could properly find the marijuana in defendant's possession was intended for sale."

■ However, intent to deliver is an essential element of the crime charged in this case, and permitting a witness to testify directly that he had an opinion that a quantity of drugs was possessed by the defendant "with intent to deliver" is tantamount to permitting the witness to testify he had an opinion as to the ultimate fact of defendant's guilt or innocence.

In *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 361, 5 N.W.2d 646, 663, we said:

> "No witness should be permitted to give his opinion directly that a person is guilty or innocent, or is criminally responsible or irresponsible, * * *."

See also *State v. Jiles,* 258 Iowa 1324, 1331, 142 N.W.2d 451, 455.

In light of our holding *supra* that the marijuana seized from Hilker and the testimony of the officers relative to the seizure was improperly admitted, we deem it unnecessary to consider the other issues stated by the defendant for review.

This case is therefore reversed and remanded for a new trial.

Reversed and remanded.