STATE of Iowa, Appellee,

v.

Ricky Lee TERRILL, Appellant.

No. 58198.

Supreme Court of Iowa.

April 14, 1976.

Rickert & Thompson, Reinbeck, for appellant.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., and David J. Dutton, Black Hawk County Atty., for appellee.

Heard by MOORE, C. J., and LeGRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal by defendant Ricky Lee Terrill involves several rulings by the trial court in a prosecution for rape under § 698.-1, Code 1973.

The State's evidence showed that defendant followed Dorothy Ann Cockhren from a tavern late at night, threw her down in a vacant lot, choked her, took off her slacks and undergarment at gunpoint, and forcibly raped her. She was hospitalized for a week following the incident. Defendant, who at the time of the incident lived with his grandmother, Allie Bea, did not testify at the trial.

The county attorney charged defendant with rape, a jury found defendant guilty, the trial court sentenced him, and he appealed.

In this court defendant contends that the trial court erred (1) in holding that the State adduced substantial corroborative evidence tending to connect defendant with the commission of the offense, (2) in admitting prejudicial irrelevant hearsay evidence on the identity issue, and (3) in giving the jury the Allen charge.

I. *Corroboration.* The statutory requirement of corroboration which was in effect at time of trial has since been repealed. Code 1973, § 782.4; 65 G.A. ch. 1271, § 2. Hence a detailed recitation of the evidence before us would be of little precedential value.

Our examination of the record discloses that the corroborative evidence, though minimal, was sufficient to carry the case to the jury. *State v. Taylor*, 222 N.W.2d 439 (Iowa); *State v. Campbell*, 217 N.W.2d 251

(Iowa). We thus reject defendant's first contention.

■ II. *Identity Evidence.* The State overwhelmingly proved corpus delicti. The hotly contested issue was the rapist's identity. On that issue, the State not only had to introduce "other evidence" under § 782.4 of the Code; the State had to satisfy the jury as a matter of fact beyond a reasonable doubt.

At both the station house and at trial, prosecutrix identified defendant as her assailant. At the time of the incident, she did not know defendant's full name—only Ricky. After the incident, prosecutrix, crying, her nose bleeding and clothing in disarray, went directly to the nearby house where she lived with her aunt. There she made certain complaints to her aunt which bolstered the State's case on identification.

During prosecutrix' direct examination at trial, this occurred:

Q. [Mr. Dutton, county attorney] What did you do next after you got in the house and were crying? A. [Prosecutrix] I called the police. I told my aunt, she knowed that boy. She said "What boy?"

Mr. Martin: [trial defense counsel] I object to this as being hearsay anything that the aunt was saying at that time. The answer is unresponsive. The question was what did she do at that time.

Mr. Dutton: I will ask another question.

Mr. Dutton then inquired about prosecutrix' call to the police.

A little later in the direct examination, this occurred:

Q. Now, at that point in time did you know who it was that this man was that you have identified as the defendant? Did you know his name? A. All I knew was Ricky.

Q. What information were you able to give the police other than that, besides the fact his name was Ricky? A. First I had talked to my aunt. I told her, does she know this boy.

Mr. Martin: I object, that is unresponsive. We are getting into the hearsay area again with the aunt.

Mr. Dutton then inquired about prosecutrix' observation of defendant at the police station the same morning.

As part of the subsequent cross-examination by Mr. Martin, this occurred:

Q. What did you do when she [aunt] answered the door? A. I was crying at first. I told her did she know that boy. She said, "What boy?" I said, "That boy that came by the house that time."

Also:

Q. When you got in you were crying and you told her exactly what happened and you were walking to the phone at the time, is that correct? A. No. I didn't tell her what happened. I asked her did she know that boy.

Prosecutrix' aunt testified next, Jo Martha Carter. She stated on direct examination by Mr. Dutton that prosecutrix came to the door, crying, nose bleeding, dirt on her clothing. When the witness began to relate what prosecutrix said, Mr. Martin objected on the ground of hearsay. The trial court overruled the objection and granted Mr. Martin's request to have the objection stand throughout the testimony as to the conversation. In the course of Mr. Dutton's further interrogation, this occurred:

Q. What did she say, if anything, as to what had happened? A. Then she told me that boy had raped her. I asked her what boy.

Q. Yes. A. She said, "You know, that boy." I said, "No, I don't know. What boy?"

Counsel then approached the bench. Thereafter the interrogation continued:

Q. Go ahead. We are sorry to keep interrupting you. Just tell us what she said to you at that time. A. Well, she come in and told me, "Jo, you know that boy." I said, "What boy?" She said, "Jo, you know that boy." And I said, "No, I don't." She said, "The boy that run"— She said, "That boy." I said, "What boy?" She said, "The boy that run Pearlie Mae home."

Mr. Martin then renewed his objection and moved to strike the answer because "it gets into unrelated incidents which are completely—or alleged incidents which are completely incompetent, irrelevant and immaterial to any issue here." The trial court stated, "The objection is overruled, but it stands in the record." Mr. Dutton resumed direct examination:

Q. Go ahead with the conversation that you had with her if you can recall where you left off, Miss Carter. A. Well, I told her—she said, "That boy that raped Pearlie Mae"—pardon me. She said, "The boy that run Pearlie Mae home."

Q. Who was Pearlie Mae? A. She is Dorothy Ann's sister. . . .

Q. Then what did you say when she said that? A. Then I asked her, "What boy?" She said, "Jo, you know." I said, "Are you talking about Allie Bea's grandson?"

Q. Who said that? A. That's what I said. She said, "Jo, you know that boy." I said, "Who?" She said, "You know that boy." Then she said, "The boy that run Pearlie Mae home."

Q. Yes. A. And she said, "You know." I said, "Allie Bea's"—

Q. What did she say when you said that? A. She said, "That's who it was."

Further:

Q. Was anything further said about who it was that had raped her? A. That's all that was said because I—that's all. That's what was said about the boy.

Q. Now, tell us when it was, if you recall, that there was an incident where that boy ran Pearlie Mae home.

Mr. Martin objected and the trial court sustained the objection. Mr. Martin then moved for a mistrial on the ground, among others, that the Pearlie Mae incident only showed defendant's propensity for rape and the testimony about it was prejudicial. The court overruled the motion.

On the ensuing cross-examination of Jo Martha Carter by Mr. Martin, this occurred:

Q. Were you present at the time this sister was apparently chased home by the defendant that you talked about? A. Yes, I was.

Q. Was Dorothy Cockhren there? A. I don't know whether she was there or not.

Q. To your knowledge then you don't know whether Dorothy Cockhren saw this or not? A. I don't know whether she saw it or not.

Mr. Martin then added to his previous objection that prosecutrix' identification of defendant based on the Pearlie Mae incident was itself based on hearsay. The trial court overruled the objection.

Defendant contends the trial court should not have admitted the testimony we have quoted. His contention raises three issues: whether prosecutrix' statements to her aunt were inadmissible (a) because they were hearsay, (b) because prosecutrix lacked personal knowledge of the Pearlie Mae incident, and (c) because prosecutrix' statements were irrelevant.

■ (a) Prosecutrix' statements made out of court to her aunt were offered to prove the truth of the fact prosecutrix endeavored to assert—that defendant was the individual who raped her. The statements were therefore hearsay. McCormick, Evidence (2d ed.) § 246 at 584.

We addressed the question of the admissibility of hearsay evidence of the type we have here in *State v. Grady*, 183 N.W.2d 707, 718 (Iowa). We held that such evidence is inadmissible, with certain exceptions not now involved, "unless the complaint was a spontaneous, unpremeditated statement so closely connected with the act as to be part of the *res gestae*."

The utterances here are a classic example of res gestae. See *State v. Swanson*, 228 N.W.2d 101 (Iowa); *State v. Smith*, 195 N.W.2d 673 (Iowa). We hold that they come within the res gestae exception to the hearsay rule and that this ground of defendant's objection to the testimony was not well taken.

■ (b) Defendant contends that prosecutrix did not herself know defendant ran

Pearlie Mae home; hence she lacked the personal knowledge which was necessary to qualify her as a witness. McCormick, Evidence (2d ed.) § 10 at 20–22, § 247 at 586–587. Defendant misapprehends the use made of prosecutrix' statement that her assailant was the person who ran Pearlie Mae home. The State did not use the statement to prove that defendant in fact ran Pearlie Mae home but rather to identify defendant. Prosecutrix and her aunt obviously believed defendant ran Pearlie Mae Home, and prosecutrix' reference to that alleged incident was her way of designating him to her aunt, whether the incident ever actually occurred or not. Prosecutrix' lack of personal knowledge of that incident was thus of no consequence.

(c) As to relevancy, evidence of other crimes by a defendant is ordinarily inadmissible in a criminal trial. *State v. Oppedal,* 232 N.W.2d 517, 520 (Iowa). We will assume arguendo that the testimony here shows the commission of another offense by defendant.

■■ One of the exceptions to the inadmissibility rule is proof of facts which tend to establish the defendant's identity as the perpetrator of the crime for which the defendant is on trial. *State v. Redding,* 169 N.W.2d 788 (Iowa); *State v. Gill,* 259 Iowa 142, 143 N.W.2d 331. The present case comes within that exception. Prosecutrix identified defendant at the station house and in the courtroom, but to support that identification the county attorney endeavored to show she identified defendant to her aunt immediately following the crime. Prosecutrix did not say to her aunt that "Ricky Lee Terrill" was the one. She told her aunt that the person was the one who ran Pearlie Mae home. That person was Allie Bea's grandson, defendant. That this conversation also disclosed improper conduct by defendant on another occasion did not deprive the State of the right to show prosecutrix thus identified defendant immediately after the incident.

We thus reject defendant's second contention.

■ III. *Allen Charge.* The trial court submitted the case to the jury about 5:00 p. m. on September 11, 1974. The jury deliberated that evening and requested additional instruction on intent and also on how to proceed, as the jurors were not making progress toward a verdict. The court released them for the night, and they returned at 9:30 a. m. on September 12 and deliberated part of that forenoon.

At about 10:30 a. m. on September 12, after the jury had deliberated approximately eight hours altogether, the trial court proposed to give the jury Instruction 21, which follows the form of Instruction 1.1 of I Iowa Uniform Jury Instructions (1970). This is a version of the so-called Allen charge. See *State v. Quitt,* 204 N.W.2d 913 (Iowa). Defense counsel objected on several grounds and then stated that his objection to the instruction was in giving it "at this time." Hence the court did not then give the instruction.

At about 3:45 p. m. the same day, the jury reported it had not been able to agree. The trial court again proposed to give Instruction 21. Defense counsel repeated his opposition, and added to his objection that the instruction was coercive. The court gave the jury the instruction.

Subsequently the same afternoon, the court gave the jury Instruction 22 on intent. Defendant does not now object to that instruction. At some point during deliberations the jury learned that defendant had been previously tried on the same charge and the previous jury had hung.

The jury deliberated until about 10:30 p. m. on September 12, and resumed deliberation at 9:00 a. m. on September 13. At 4:35 p. m. that day they reached a verdict. The clerk of court polled the jurors, and each juror answered the verdict was his or her verdict.

Defendant made his objection to Instruction 21 a ground for his motion for new trial. The trial court held a hearing on the motion, and several jurors testified at the hearing. Most of their testimony was subjective in nature—matters inhering in the verdict. See *State v. Smith,* 240 N.W.2d

693 (Iowa); *State v. Brown*, 253 Iowa 658, 671, 113 N.W.2d 286, 294 ("We have frequently held it is not competent to show by statements of jurors what influenced the verdict. That is a matter of opinion which inheres in the verdict. Accordingly it may not be shown in such manner, to avoid the verdict, that a juror did not assent to it, misunderstood the court's instructions or the testimony, was unduly influenced by statements of fellow jurors, was mistaken in his calculations or judgment, or other matters resting alone in the juror's breast. These all inhere in the verdict.").

We have compared the circumstances here with those in the cases defendant cites as well as those in cases holding the other way. We find the present circumstances more akin to those in cases holding that giving such an instruction as the present one was not error. See *State v. Quitt*, 204 N.W.2d 913 (Iowa); *State v. Kelley*, 161 N.W.2d 123 (Iowa); *Coulthard v. Keenan*, 256 Iowa 890, 129 N.W.2d 597; *In re Estate of Cocklin*, 232 Iowa 266, 5 N.W.2d 577; *State v. Gillam*, 230 Iowa 1287, 300 N.W. 567; *State v. Bogardus,* 188 Iowa 1293, 176 N.W. 327. We thus do not accept defendant's third contention.

■ Although defendant raises no issue as to the form of the sentence, we note that the sentence does not comply with § 698.1 of the Code. That section provides for a sentence from five years to life, the provisions of the indeterminate sentence statute notwithstanding. But the trial court imposed a sentence "of not more than thirty (30) years" as though the indeterminate sentence law applied. We thus return the case to district court for imposition of such sentence as the trial court deems appropriate, in conformity with the statute.

AFFIRMED BUT REMANDED FOR RE–SENTENCING.