STATE of Iowa, Appellee,

v.

William Ray WATSON, Appellant.

No. 58073.

Supreme Court of Iowa.

May 19, 1976.

Rehearing Denied June 22, 1976.

James F. Fowler, Indianola, for appellant.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen. and John W. Criswell, County Atty., for appellee.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

Defendant was sentenced to serve a term of 20 years in the Men's Reformatory after a Warren County jury convicted him of assault with intent to commit rape in violation of the provisions of § 698.4, The Code. He appeals from that judgment, and we affirm the trial court.

Defendant raises issues involving the trial court's denial of his motion for directed verdict, evidentiary rulings, and erroneous jury instructions.

We treat these matters individually but before doing so, we set out the factual background of this appeal.

Defendant is alleged to have assaulted Diane Berry with intent to rape her. The circumstances leading up to the offense began about 1:30 in the afternoon while Miss Berry, 17 years old, was walking from her home in Des Moines to the Woolco Store on Southeast 14th Street. As she was walking east on Park Avenue, a Volkswagen sedan stopped and defendant, a passenger in that vehicle, which was being driven by William Halsted, asked her if she wanted a ride. She imprudently accepted the offer and got into the rear of the car.

She told these men her destination. When they approached that point, she told them where to let her off. Instead Halsted drove on by. When Miss Berry asked again if she could get out, defendant told her she would have to ask the driver. She did so and Halsted replied she could not. Miss Berry testified she asked nine or ten times to be let out of the car, but her requests were refused, either by silence or by verbal refusals.

Halsted drove the vehicle out into the rural area and stopped at a deserted farmstead. He suggested they go into the barn. Miss Berry refused. Later the suggestion was renewed, and Miss Berry said she would go if they wouldn't hurt her. Instead she attempted to escape. Both men grabbed her. She testified one of them choked her until she was afraid she was going to black out. Both tried to pick her up and force her to go with them. She fought them off, screaming and yelling. Halsted told her to shut up or she would really get hurt. There is some evidence one of the men held a knife at her throat.

About this time, a neighbor from an adjoining farm noticed the commotion and loudly inquired what was going on. This apparently frightened the men, who then pushed her to the ground, took her purse, and ran to their car. She in turn ran to the highway and stopped a passing truck driven by Dennis Six, whose testimony later became vitally important. Miss Berry got in Six's truck. They chased the Volkswagen, and eventually Six rammed it with his truck in an attempt to disable it. However, this was unavailing, and the chase was

abandoned when defendant brandished a knife out of the car window.

The Volkswagen's license number was noted and reported to the authorities. Defendant's arrest, trial, and conviction followed.

■ I. Defendant's first complaint concerns statements made by Miss Berry when Dennis Six stopped to assist her. This was immediately after the assault. The statements were testified to by both Miss Berry and Six.

The matter arose this way. When Six stopped, he asked Miss Berry, "What's the matter?" She responded, "Those guys tried to rape me and took my purse."

Over objection, the trial court permitted the evidence to go in as a res gestae statement. Defendant challenges this ruling because (1) the statement was made in response to a question and was therefore not voluntary; and (2) Miss Berry's statement was an expression of opinion as to the ultimate fact of defendant's guilt.

We hold the trial court correctly allowed the testimony.

At the time of the statement, Miss Berry was in the act of escaping from the place where she claims she had just been assaulted, threatened, and intimidated. She was still suffering from her recent harrowing experience. Dennis Six testified "she was pretty well shook up." He also said she looked as though she had been "smacked quite a few times." The statements qualify as res gestae utterances. *State v. Terrill,* Iowa, 241 N.W.2d 16, filed April 14, 1976.

The fact that Miss Berry made her statements in response to Six's inquiry asking what was wrong does not necessarily rob them of their spontaneity. *See State v. Smith,* 195 N.W.2d 673, 676 (Iowa 1972); *Gibbs v. Wilmeth,* 261 Iowa 1015, 1024, 157 N.W.2d 93, 98–99 (1968). The question was a most natural one under the circumstances. It was not calculated to elicit information which would otherwise have been withheld. It did not render the response inadmissible.

■ We also reject defendant's argument the statements should have been excluded as impermissibly expressing an opinion on the ultimate question of guilt. Defendant relies on *State v. Oppedal,* 232 N.W.2d 517, 524 (Iowa 1975) and *State v. Horton,* 231 N.W.2d 36, 38 (Iowa 1975).

Those decisions, and others like them, do not help defendant. In both *Oppedal* and *Horton* a witness at trial, testifying as an expert, undertook to say defendant was guilty of the crime with which he was charged or was guilty of one of its elements.

■ That rule may not be used to exclude a res gestae statement otherwise properly admissible. We allowed similar statements in *State v. Terrill, supra; State v. Smith, supra,* 195 N.W.2d at 676; *State v. McClain,* 256 Iowa 175, 183–184, 125 N.W.2d 764, 769, 4 A.L.R.3d 134 (1964); and *State v. Drosos,* 253 Iowa 1152, 1162, 114 N.W.2d 526, 532 (1962).

In this regard, *see also Commonwealth v. Rogozinski,* 387 Pa. 399, 404, 128 A.2d 28, 30 (1956), where the Pennsylvania Supreme Court said:

"Decedent's declarations that 'he was robbed,' and 'he took all the money,' were admitted as res gestae. Defendant apparently objects only to the word 'robbed' in that it was a 'conclusion or an opinion.' * * * The declaration was that of one not learned in the law, and could not have been misunderstood, in its effect, by the jury. It came spontaneously from decedent's lips under the shock and excitement of inflicted violence impelling its utterance, and as soon thereafter as not to break the continuity of events, and was therefore admissible. [Citations omitted.]"

■ There is still another reason this testimony was properly received. It formed part of the whole transaction and was so closely related to the commission of the crime it was admissible to explain the circumstances under which the offense occurred.

This is also true concerning another of defendant's complaints objecting to testimony that defendant brandished a knife out of the car window as Six was pursuing them. *See State v. Henning,* 238 N.W.2d 783, 785 (Iowa 1976); *State v. Pilcher,* 242 N.W.2d 367 (Iowa 1976); *State v. Hinkle,* 229 N.W.2d 744, 748 (Iowa 1975); *State v. Oppedal, supra,* 232 N.W.2d at 520–522; *State v. Guess,* 223 N.W.2d 214, 216 (Iowa 1974); *State v. Drake,* 219 N.W.2d 492, 494 (Iowa 1974); *State v. Lyons,* 210 N.W.2d 543, 546 (Iowa 1973).

■ II. Defendant claims error in permitting Michael Six to testify he heard a neighbor, Wilbur Shute, shout, "What the hell's going on down there?"

Michael Six, Dennis' brother, was working at his home, which is adjacent to the farmyard where defendant and Halsted had taken Miss Berry. He heard a woman scream and yell. Then he heard Mr. Shute make his shouted inquiry. This caused Michael Six to make some visual investigation of his own. He saw two men running toward a Volkswagen car parked nearby and at the same time saw Miss Berry running toward the spot where Dennis Six picked her up.

Defendant says this testimony was inadmissible, first, because the State had failed to note Shute as a witness. Since he could not testify personally, defendant argues no one else can say what they heard him say. Secondly, defendant asserts the testimony was hearsay.

We find no merit in the first objection. If the testimony is otherwise admissible, the fact that Shute himself did not testify does not prevent another from saying what he heard.

We also disagree with defendant on his second complaint. The statement was not hearsay because it was not intended to prove the truth of any fact. The statement itself had no element of truth or falsity. It could prove nothing except its own utterance. Its only purpose was to explain Michael Six's reason for being attracted to what was happening in the neighboring farmyard. For this purpose it was clearly admissible. *See State v. Hinkle, supra,* 229 N.W.2d at 748.

■ III. Defendant next complains because the trial court denied his motion for directed verdict made at the close of the State's case and renewed at the end of all the evidence.

The motion challenges the sufficiency of the evidence on the necessary element of intent. We hold a jury question was generated and that the motions were properly overruled.

We have already detailed many of the facts. Defendant argues neither Halsted nor defendant at any time made any sexual suggestion; that the alleged assault included no sexual advances; that the men had Miss Berry in their power for an extended period of time and made no overt effort to accomplish what the State says was their purpose. He assails Miss Berry's testimony in many respects as insufficient, if not actually incredible.

We have given serious consideration to all these matters. They are persuasive jury arguments and were no doubt urged there without success.

In considering the sufficiency of evidence to defeat a motion for directed verdict, we review only that which is favorable to the State, whether contradicted or not, and we accord it all the reasonable inferences to which it is entitled. *State v. Blyth,* 226 N.W.2d 250, 266 (Iowa 1975); *State v. Hansen,* 225 N.W.2d 343, 348 (Iowa 1975).

The case is peculiar in many circumstances. No verbal suggestion was made to Miss Berry concerning sexual intercourse. Some of Miss Berry's testimony concerning going to a friend's house "where they could be alone" and her suggestions that they find a place to get "high" was indeed inconsistent with her other testimony. However, she had plausible explanations for these matters which the jury could—and did—accept. The total circumstances were such that the jury could find defendant assaulted Miss Berry with the intent to rape her.

■ IV. The remaining assignments of error relate to Instructions 11, 13 and 15.

Instruction 11 was on intent. It included this paragraph:

"In determining the intent of any person you have a right to infer that he intended to do that which he voluntarily did, and that he intended the probable and natural consequences to follow his acts, voluntarily done, which ordinarily follow such acts."

Relying principally on *State v. Roby,* 194 Iowa 1032, 1047–1048, 188 N.W. 709, 716 (1922), defendant argues the instruction is fatally defective because his alleged intent was not accomplished. There was no rape and therefore it was error to instruct on the "probable and natural consequences" of his acts.

There is indeed language in *Roby* which supports this contention. However, the later case of *State v. Ramsdell,* 242 Iowa 62, 65–66, 45 N.W.2d 503, 505–506 (1951) not only distinguishes *Roby* factually but also questions its reasoning in any event.

We hold the *Ramsdell* rationale to be controlling. Admittedly the circumstances shown there were much stronger than here, including a more violent physical assault as well as verbal expressions of defendant's intention. Nevertheless there was evidence from which the jury could find, as we said in *Ramsdell,* defendant intended "consummated rape" to be the natural and probable consequences of the assault. We said further:

"It is begging the question to say that because no consequences ensued the instruction is wrong. If the 'natural and probable consequences and results' had ensued the crime would have been rape instead of assault with intent to commit rape." 242 Iowa at 66, 45 N.W.2d at 506.

There is no error in the instruction as given.

Defendant also objected to Instruction 13 on aiding and abetting. We set out the objection made:

"The instruction is objectionable because it does not indicate that this defendant to aid and abet would have to have knowledge of the other person's intent. I think this instruction imputes the intent of the alleged principal to this defendant * * * *"

■ To aid or abet means to assent to an act or to lend countenance or approval either by active participation in it or by some manner encouraging it. *State v. Youngbear,* 203 N.W.2d 274, 280 (Iowa 1972); *State v. Daves,* 259 Iowa 584, 586, 144 N.W.2d 879, 881 (1966).

■ The trial court fully and correctly instructed on aiding and abetting, including the necessity that defendant knowingly participated in the crime. Once this is established, defendant may be convicted upon proof of his own intent to commit rape, regardless of any showing as to what Halsted intended.

■ The guilt of one charged with aiding and abetting must be determined on facts showing his part in the crime. It does not depend on another's guilt, nor does the guilt of all be the same. *State v. Youngbear, supra,* 203 N.W.2d at 280 and citations; *State v. Fetters,* 202 N.W.2d 84, 90 (Iowa 1972); *State v. Kittelsen,* 164 N.W.2d 157, 161–162 (Iowa 1969); *State v. Daves, supra,* 259 Iowa at 586, 144 N.W.2d at 881; *State v. Bittner,* 209 Iowa 109, 111, 227 N.W. 601, 602 (1929); *State v. Wolf,* 112 Iowa 458, 462, 84 N.W. 536, 538 (1900).

We have held one who aids and abets may be prosecuted and convicted even after the principal has been acquitted. *State v. Cunha,* 193 N.W.2d 106, 109 (Iowa 1971).

There was no error in refusing to instruct the jury defendant could not be convicted without proof that Halsted, too, intended to commit rape.

■ The last challenged instruction defined the terms "assault" and "rape." Defendant says it was erroneous because it failed to include a definition of intent.

As previously noted, the issue of intent was explained elsewhere. It was fully covered in the instruction on the elements to be proven by the State.

As part of his objection defendant alleged these two instructions (the one defining the terms rape and assault and the one setting out the elements to be proven) were in irreconcilable conflict. Defendant argues this must have confused the jury, permitting that body to select either of two contradictory instructions.

We find no merit in this complaint.

No one instruction can include all instructions, which must be read as a whole rather than piecemeal. When that is done here, there is no conflict and consequently no error. *Booras v. Highway Commission,* 207 N.W.2d 566, 569 (Iowa 1973); *State v. Wallin,* 195 N.W.2d 95, 99 (Iowa 1972).

V. Defendant's other assignments of error raise only issues we have already considered and decided against him. We therefore do not discuss them further.

The judgment is
AFFIRMED.