**STATE of Iowa, Appellee,**

v.

**Sharen Kay LEONARD, Appellant.**

**No. 58652.**

Supreme Court of Iowa.

June 30, 1976.

James William McGrath, Keosauqua, and Richard D. Hoadley, Fairfield, for appellant.

Richard C. Turner, Atty. Gen., David L. Brown, Asst. Atty. Gen., and Edwin F. Kelley, Jr., County Atty., for appellee.

McCORMICK, Justice.

Defendant Sharen Kay Leonard appeals her conviction and sentence for assault with intent to commit murder in violation of § 690.6, The Code. The charge arose from an incident in the evening of August 19, 1974, when she shot her former husband

Robert W. Leonard. Defendant challenges various evidentiary rulings, the court's instructions, and the sufficiency of evidence to support the charge. We affirm the trial court.

The parties agree on most of the facts. Defendant and Robert W. Leonard were married in 1969 and obtained a dissolution of their marriage in November 1973. The dissolution court granted defendant custody of the two children of the marriage. In July 1974, a court took the children from defendant and put them in a foster home; Robert testified at the hearing leading to that disposition. At that time defendant said she was going to get even with Robert if it was the last thing she did.

Defendant spent the night of August 18, 1974, with one John Fishel. She took a pistol from Fishel's residence when she left the next day. About 5:30 or 6:00 p. m. on that day, Fishel visited Robert at the post office in Fairfield, Iowa, where Robert worked, and told him to stay away from defendant. Robert asked Fishel to return in fifteen minutes to explain what he meant, but Fishel did not return. Robert closed the post office at 6:30 p. m. and proceeded toward his car in the parking lot.

Defendant met Robert in the post office parking lot. She got into his car with him, pulled the pistol from her clothing, and made him drive out of Fairfield. She had him stop on a dirt road in the country and get out of the car. Robert immediately began to run away, zigzagging. Defendant fired three shots in his direction, one of which struck him in the back below the right shoulder blade. Robert continued his flight, however, and after some 45 minutes obtained help at a nearby farm. An ambulance took him to a hospital in Fairfield and later to University Hospital in Iowa City. He recovered from his wound. Officers arrested defendant near Bethany, Missouri, about 11:30 p. m. on the day of the shooting.

This appeal arises from her subsequent conviction for assault with intent to murder Robert based on that incident.

Five questions are presented: (1) did the trial court err in overruling defendant's hearsay objections to certain evidence? (2) did the court err in overruling objections to leading questions? (3) was defendant denied due process by confusing testimony? (4) did the court err regarding expert witness instructions? (5) did the court err in finding the evidence sufficient for submission of the charge to the jury?

I. *Hearsay.* Defendant objected several times that certain of the prosecutor's questions called for hearsay.

A. The first occasion was when Robert testified regarding his conversation with John Fishel at the post office.

Robert was the State's first witness. He was asked a number of routine background questions. He testified regarding the dissolution of his marriage to Sharen and her threat to get even with him for testimony against her in the subsequent custody proceeding which resulted in the children being removed from her custody and placed in foster care. Robert said he did not see Sharen again until the evening of August 19, 1974. When asked where he was at 6:00 p. m. on that date, he said he was performing duties preparatory to locking up the post office, where he was employed. Then the following testimony was given:

Q. Did anyone come to you prior to locking up the post office with any warning? * * * A. Yes, a man by the name of John Fishel. Well, there is another man that was there at the post office. He had another duty, and he informed me that John Fishel wanted to see me. Had something very important to tell me.

Q. What did Mr. Fishel state?

MR. McGRATH: Object, Calling for hearsay, your honor.

THE COURT: Overruled. The witness may answer.

A. Yes. He told me to stay away from Sharen, and I asked him at that point what in the world did he mean by this, and it happened to be at a time when we was getting ready to get a dispatch out, and I didn't have any time to discuss it any further with him, so I told him, John,

would you please come back in fifteen minutes and tell me what you are talking about, and at this time, he told me, well, he said, he would agree to this. After fifteen minutes went by, he did not show up, so I took it to mean it didn't mean anything to me. I figured it didn't mean nothing.

Q. Did you lock up the Post Office that night? A. I did, yes.

Q. What time approximately? A. Six-thirty.

Q. What did you do after you locked up the Post Office? A. I proceeded to go out to my car, and I got within approximately fifteen feet of it, I noticed Sharen coming on the other side of the car.

Robert then testified to the other events which led to the shooting a few minutes later.

Defendant's only objection to Robert's recital of Fishel's admonition was predicated on the hearsay ground. Since the objection was overruled, she is limited here in her attack on the court's ruling to the specific ground of her objection below. If the hearsay rule can be found inapplicable here under any theory, the ruling will be upheld. *State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976); *State v. Hinkle,* 229 N.W.2d 744, 748 (1975) ("there is no reversible error if trial court's ruling which admitted the evidence in controversy may be sustained on any ground").

■ We have repeatedly defined hearsay as a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. See, *e. g. State v. Kidd,* supra, at 864; *State v. Miller,* 204 N.W.2d 834, 840 (Iowa 1973); see rule 801(c), Federal Rules of Evidence. An out-of-court utterance is not hearsay unless it contains an assertion of fact and is offered to prove the truth of that assertion. *State v. Watson,* 242 N.W.2d 702, 704 (Iowa) filed May 19, 1976; *State v. Miller,* supra; rule 801, Federal Rules of Evidence. Such an assertion comes within the hearsay rule because it rests for its value on the credibility

of the out-of-court asserter. McCormick on Evidence § 246 (Second Ed. 1972).

Wigmore explains the theory of the hearsay rule as follows:

"The theory of the Hearsay rule * * * is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is received, this is in no way due to the Hearsay rule." VI Wigmore on Evidence § 1766 at 177–178 (Third Ed. 1940).

See *Greenblatt v. Munro,* 161 Cal.App.2d 596, 326 P.2d 929, 932–933 (1958).

■ We do not think the hearsay rule required exclusion of the testimony challenged here.

■ First, Fishel's remark was not an assertion of fact. A nonassertive utterance is not hearsay. *State v. Watson,* supra, 242 N.W.2d at 704.

Second, even assuming the remark contained an implied assertion that Sharen intended to harm Robert, the making of the remark was relevant evidence without reference to its truth or falsity. Sharen testified she had spent the prior night with Fishel and had taken a pistol from his home. The fact that Fishel later came to the post office to see Robert was part of the whole transaction. What Fishel said to Robert explained his purpose in coming there. Robert's testimony about Fishel's coming to the post office and warning him could properly be received as relevant circumstantial evidence reasonably necessary to complete the whole story of the crime charged. See *State v. Watson,* supra, at 704; *State v. Hinkle,* 229 N.W.2d 744, 748

(Iowa 1975); *State v. Lyons,* 210 N.W.2d 543, 546–547 (Iowa 1973); VI Wigmore on Evidence, supra, § 1788 at 234 ("If, then, an utterance can be used as circumstantial evidence, i. e. without inferring from it as an assertion to the fact asserted * * * the Hearsay rule does not oppose any barrier, because it is not applicable.").

Robert's testimony was admissible on the theory it was not received to prove the truth of Fishel's remark, but was received without reference to the truth or falsity of any assertion in it. Since the testimony was admissible on this theory, we do not find reversible error in the trial court's ruling admitting it.

■ B. The trial court three times admitted testimony that shortly after the shooting Robert said his wife had shot him. Mrs. King, the farm wife, testified Robert said this at the farm where he first received help, the sheriff also testified Robert made such a statement at the farm; and an ambulance attendant, Allen Crandall, testified Robert said in the hospital emergency room that his wife shot him. The court admitted the testimony each time over defendant's objection of hearsay.

This testimony clearly was hearsay. We think however it was admissible as res gestae. The testimony indicated that even the last of the statements, the one to Crandall, occurred within about 90 minutes of the shooting. Although some testimony indicated Robert was not excited when he made the statements, other testimony showed he was "exhausted". On one occasion this court held admissible the statements of the victim of an assault made after she wandered dazed for some 14 hours after a beating. The court said, "To declare what had taken place, how she came to be injured, and where, while lacking the element of contemporaneous connection, yet will stand the test of spontaneity, and a natural expression of what had happened to her." *State v. Stafford,* 237 Iowa 780, 787, 23 N.W.2d 832, 836 (1946). Again, the court held admissible the testimony of statements made by the victim while awaiting an ambulance in a doctor's office. The court said

the statements were "spontaneously and instinctively made under the influence of the event." *State v. Drosos,* 253 Iowa 1152, 1163, 114 N.W.2d 526, 532 (1962). We think Robert made his statements under similar circumstances. At least we cannot say the trial court abused its discretion in admitting this testimony.

■ In addition, prejudice does not appear. In her testimony defendant admitted she fired the shot which hit Robert; she only denied that she intended to hit him. Ordinarily admission of evidence is not prejudicial when the evidence is of matters conceded by the defendant. *State v. Jurgenson,* 225 N.W.2d 310, 312 (Iowa 1975).

■ II. *Leading questions.* Defendant complains of three rulings of the trial court overruling her objections to questions of prosecution witnesses on the ground they were leading. A trial court has considerable discretion in admitting or excluding answers to leading questions, and there must be a clear abuse of discretion to justify a reversal. *Giltner v. Stark,* 219 N.W.2d 700, 706 (Iowa 1974).

■ One of defendant's objections was sustained but was untimely. In the other two instances, we find the trial court acted within its discretion in overruling the objections.

■ III. *Confusing testimony.* On five occasions the prosecutor inadvertently referred to Robert W. Leonard as "defendant". On three occasions in his testimony the sheriff erroneously referred to witnesses King by the name "Steele". Defendant's only objection occurred when the prosecutor made one of his mistaken references. After the objection, the prosecutor corrected himself.

■ Defendant contends the trial court denied her due process and abused its discretion in allowing these mistakes to occur. We do not agree. Defendant objected only once, and the mistake on that occasion was then corrected. Having failed to object on the other occasions, defendant may not predicate error on them. In any event,

under the whole record, these misnomers did not create any reasonable possibility of jury confusion.

We find no merit in this assignment.

IV. *Expert witness instructions.* Defendant objected to an instruction identifying one of the State's witnesses as an expert, and also to the court's refusal to give a similar instruction as to one of defendant's witnesses.

■ A. Dr. W. C. Baumann of Fairfield testified for the State. He was the first physician to examine Robert after the shooting. Dr. Baumann testified to the path of the bullet in Robert's body, said he doubted if the bullet had bounced off a rib, and said that from the path of the bullet Robert either was bent over when struck or was above the person who shot him. He also said he did not think a ricocheted bullet would have made a wound as clean as the one Robert had, although he was not sure. Defendant did not object to any of the doctor's answers or to the questions eliciting them. Dr. Baumann himself, however, volunteered that he was "obviously not a forensic pathologist."

The trial court gave an expert witness instruction in the usual form with reference to Dr. Baumann. Defendant objected that the instruction did not state with sufficient specificity the area of the doctor's expertise and that it should have stated the doctor was not a forensic pathologist.

The court had discretion in instructing the jury regarding Dr. Baumann's testimony. The doctor's expert testimony went primarily to the results of his examination of Robert and the path of the bullet in Robert's body. His knowledge as a physician and, perhaps, common knowledge supported this testimony. The doctor's equivocation as to whether a ricochet caused the wound came in response to a question from defendant, and was not presented as an expert opinion. We cannot say the trial court abused its discretion by refusing to alter the instruction.

■ B. Defendant called as a witness an officer in the Fairfield police depart-

ment, Russell Schafer. This witness had attended numerous police schools, and his hobby was firearms. He had owned and fired many handguns of various kinds.

Defendant used a .32 caliber pistol in the shooting in question. Schafer testified he had fired two different .32 caliber pistols and they were not very accurate. He further testified he was not familiar, however, with the particular brand of gun used by defendant, a Titanic .32. Schafer also said such guns are called Saturday night specials and are not known for their accuracy. He testified without objection he thought a ricocheted bullet would probably cause a more ragged wound than a direct shot. When asked by the prosecutor if a bullet could likely ricochet off the ground, travel a stated distance, and make a clean entrance wound, Schafer declined to answer because of insufficient assumed information about the angle of deflection, the consistency of the ground, and the distance traveled.

Defendant requested an instruction that Schafer testified as a ballistics and firearms expert, "follow[ing] the same lines as the instruction concerning the expert witness, Dr. Baumann." The court refused to give the instruction.

We agree with the trial court that the evidence did not qualify Schafer as a ballistics expert; his experience in the use of firearms does not alone make him one. Nevertheless, the trial court might well have given the expert witness instruction regarding Schafer as a firearms expert. Schafer's testimony relating to the accuracy or inaccuracy of Saturday night specials was probably based on such knowledge.

However, the only fact to which Schafer testified as a firearms expert was that Saturday night specials are generally inaccurate. On cross-examination of Schafer the prosecutor expressly accepted this fact. Therefore, no controversy existed as to the testimony Schafer gave as an alleged firearms expert. His credibility as a firearms expert on the general inaccuracy of Saturday night specials was unchallenged.

Since defendant could not have been prejudiced by the trial court's refusal to give

the instruction, the court's refusal was not reversible error.

■ V. *Sufficiency of evidence.* Defendant contends the trial court erred in submitting the case to the jury on the crime charged because the record contained insufficient evidence she intended to kill Robert. This contention was not raised in the trial court and cannot be urged for the first time here. *State v. Smith,* 228 N.W.2d 111, 112 (Iowa 1975).

We find no reversible error.

AFFIRMED.

All Justices concur except UHLENHOPP, J., who dissents.

UHLENHOPP, Justice (dissenting).

I believe the trial court should have sustained defendant's hearsay objection to Robert Leonard's testimony of John Fishel's warning.

An out-of-court utterance is hearsay if it contains an assertion of fact and is offered to prove the truth of that assertion. The court holds Fishel's warning "Stay away from Sharen" does not contain an assertion of fact. I believe that Fishel's words mean "Sharen intends you harm." This is not an "implied assertion" case like the famous one of *Wright v. Doe d. Tatham,* 5 Clark & Finnelly 670. There the court excluded as hearsay certain letters written to a decedent that were offered as evidence from which decedent's competency could be inferred. No need exists in the instant case to draw any inference from the words uttered to the fact sought to be proven. Fishel's words themselves are probative of Sharen Leonard's intent.

Rule 801 of the Federal Rules of Evidence, cited by the court in its opinion today, says that a statement is an oral or written assertion if it is intended as an assertion. There can be little doubt that Fishel *intended to assert* "Sharen means you harm." Otherwise why would Fishel say "Stay away from Sharen"? Clearly the prosecutor purposed to show by the assertion that Sharen intended to harm Leonard. The additional minutes of testimony provid-ed by the county attorney said that Robert Leonard would testify Fishel told him "if he saw Sharen to be careful" and also that one of Leonard's co-workers at the post office would testify Fishel told Leonard "to be careful of Sharen Leonard."

For the purpose of applying the hearsay rule, a matter may be "asserted" by words not in the *form* of an assertion. Courts should be concerned not with the form of the statement, but with its substance. Only thus can the important purpose of the hearsay rule be achieved. The present utterance was in the imperative rather than assertive form. When evidence of such an utterance is offered and the utterance is relevant because an assertion of fact is its meaning, the policy underlying the hearsay rule calls for application of that rule.

The admission of Fishel's warning, indicating as it did defendant's intention to harm Leonard, was highly prejudicial. The only real issue in the trial was defendant's intent. No question existed but what defendant fired the shot that struck Leonard but defendant said she only intended to frighten him. She claimed she at no time intended to hurt him. The evidence of Fishel's warning thus went to the heart of the case.

The court states that even assuming the utterance meant defendant intended to hurt Leonard, evidence of the statement was admissible because the statement was relevant without regard to its truth or falsity—the evidence of Fishel's statement was "reasonably necessary to complete the whole story of the crime charged." Yet the utterance explained no one's actions or motives except defendant's intent. Robert Leonard testified that at the time Fishel's warning "didn't mean anything to me." The warning had no effect whatsoever upon Leonard's subsequent acts. Anyway, Leonard's knowledge or intent was not an element of the crime. The case is not like the personal injury action in which the defendant contends the plaintiff was contributorily negligent because he disregarded an advance warning about a dangerous condi-

tion. *Chicago G. W. Ry. v. Price,* 97 F. 423 (8 Cir.) (conductor warned not to approach gasoline with lantern); *Mueller v. Washington Water Power Co.,* 56 Wash. 556, 106 P. 476 (plaintiff warned not to alight while car moving).

The court cites *State v. Watson,* 242 N.W.2d 702 (Iowa). There the out-of-court statements were made by the victim of an attempted rape immediately after she was assaulted. She said, "Those guys tried to rape me and took my purse." In holding the statements admissible as part of the res gestae this court said, "She was still suffering from her recent harrowing experience. [A witness] testified 'she was pretty well shook up.'" The statements in *Watson,* unlike Fishel's warning, helped explain the events of the crime charged itself. In addition, they were spontaneous utterances resulting from the harrowing experience.

Nor is the result here supported by *State v. Hinkle,* 229 N.W.2d 744 (Iowa). There a witness was permitted to testify to a statement she made to a neighbor just before the murder with which defendant was charged; the witness had told the neighbor of an earlier conversation she had with the murder victim, in which the victim stated her fear of the defendant. The court said:

> It is obvious from the record that this report by one in the vortex of a fear-ridden neighborhood immediately prior to the homicide caused [the witness] to approach [the victim's] home and return at once in great excitement just before she heard [the victim's] door being broken down. . . . [W]e believe the statement in issue was admissible, for the purpose of showing it was said, under the *Lyons* [*State v. Lyons,* 210 N.W.2d 543 (Iowa)] rule, *in explaining the actions of these witnesses.* 229 N.W.2d at 748, 749. (Italics added.)

The court was dealing with a witness who was immediately involved in the crime.

Finally, the result here is not supported by *State v. Lyons,* 210 N.W.2d 543 (Iowa). The controverted statements were made there by the defendant himself during the very course of the robbery with which he was charged. Like the out-of-court statements in *Watson* and *Hinkle,* those statements occurred during the course of the crime charged or helped explain the actions of the people immediately involved with the crime. Such cannot be said of Fishel or of his warning. Moreover, I think we should take care that in admitting utterances to show the whole picture of a crime we do not let in hearsay evidence of a fact in issue. The error does not stop with admission of the hearsay evidence; it is magnified during jury argument.

Evidence of Fishel's warning was relevant, and was offered, to prove Sharen Leonard's intention to harm her former husband—the fighting issue in the case. The policy reasons underlying the hearsay rule call for its application here.

I would reverse for a new trial.