STATE of Iowa, Appellee,

v.

**Jeffrey Laverne EDGERLY, Appellant.**

No. 96–1380.

Court of Appeals of Iowa.

Sept. 24, 1997.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Shawn Wende, Assistant County Attorney, for appellee.

Considered by SACKETT, P.J., and HUITINK, J., and HAYDEN, Senior Judge.*

HUITINK, Judge.

Jeffery Edgerly appeals from his convictions for third-degree burglary and second-degree theft. We reverse and remand for a new trial.

### I. Background Facts and Proceedings.

Edgerly was arrested and charged with these offenses following a burglary at a

---

* Senior judge assigned by order pursuant to Iowa Code § 602.9206 (1997).

Waterloo convenience store. The record indicates Edgerly was arrested by Waterloo police officer Ann Miller shortly after she responded to the store's security alarm. Miller's testimonial account of events leading to Edgerly's arrest includes her observation of someone wearing dark-colored pants and coat and a baseball cap running away from the store toward a red Geo Storm parked within a block of the store. It was later determined this car was owned by a Cedar Rapids resident.

The record also indicates Miller stopped Edgerly and questioned Edgerly when she saw him walking four blocks from the store three hours after responding to the security alarm. Miller testified she stopped Edgerly because his stature and clothing resembled the person she saw running from the store. When Edgerly was asked to explain his presence, he told Miller he had been drinking with his girlfriend and that she dropped him off because he was drunk. A preliminary breath test administered at the scene of this encounter was negative for alcohol. A pat down search of Edgerly's person produced a set of car keys belonging to the Geo Storm.

Edgerly moved to suppress any physical evidence seized and statements made during this investigatory stop. He cited the absence of any reasonable cause supporting Miller's decision to make an investigatory stop. The district court denied Edgerly's motion to suppress.

The State's case also included evidence of similar burglaries in the Cedar Falls area and the police department's suspicion, based on undisclosed evidence, that someone from Cedar Rapids was responsible for these burglaries. Edgerly filed a motion in limine to prevent the State's anticipated reference to this evidence. Although the State did not initially resist Edgerly's motion, the court was alerted to the State's intended offer of similar burglary evidence at trial. The State argued the details of these burglaries were similar to this one and the evidence was necessary to explain the decision to seize the Geo Storm. The court's ruling on the motion in limine permitted the State's witnesses to "briefly testify about other burglaries in this area and there was some information indicat-ing these people may be—or coming from Cedar Rapids." Police officer Michael McCallum, without further objection, testified to the similarities of this burglary to others in the area and that police intelligence information linked the burglaries to unknown people from Cedar Rapids.

The officer who interrogated Edgerly following his arrest also testified at trial. He testified, without objection, that Edgerly was "uncooperative," "belligerent," and "wouldn't answer me" during the interrogation.

Edgerly was convicted as charged. On appeal he contends the district court erred in failing to suppress any evidence obtained as the result of Miller's investigatory stop. Edgerly also argues evidence of similar burglaries and their Cedar Rapids connection was inadmissible and the resulting prejudice necessitates a new trial. Lastly, Edgerly claims he was denied effective assistance of counsel. He cites his lawyer's failure to object to admission of the preliminary breath test results and the police officer's testimonial reference to Edgerly's refusal to answer questions during his interrogation.

## II. Scope of Review.

We review those appellate contentions implicating Edgerly's constitutional rights de novo. *State v. Riley*, 501 N.W.2d 487, 488 (Iowa 1993). Edgerly's challenge to the district court's evidentiary rulings is reviewed for an abuse of discretion. *State v. Hubka*, 480 N.W.2d 867, 868 (Iowa 1992).

## III. Investigatory Stop.

A police officer may stop and detain a person for investigatory purposes. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–07 (1968); *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993). When an investigative stop is challenged on the basis that it is not supported by reasonable cause, the State must prove the investigating officer had a specific and articulable cause to support a reasonable belief that criminal activity may be afoot. *State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982).

As already noted, Miller testified she saw someone running from the convenience

store and approach a red Geo Storm parked nearby. She also testified she saw Clark walking a short distance from the convenience store and that his stature and clothing were similar to the person she earlier observed. These facts provided Miller reasonable and articulable cause supporting her decision to stop Clark and make investigative inquiries. The district court correctly denied Clark's motion to suppress evidence obtained as a result of this encounter. We affirm on this issue.

### IV. Evidence of Similar Burglaries.

At the hearing following the State's declaration of its intent to offer similar burglary evidence, the county attorney stated:

[The] Cedar Falls Police Department had prior to this case, been investigating two burglaries of convenience stores with similar modus operandi; pry-bars on the front doors of convenience stores and phone lines having been cut, and its safe in one case was looked for, nothing was found in the one burglary, and the other two had been removed, and the other burglary about six thousand dollars in cash was taken of a convenience store. But the point is that the state wants to bring before the court, as soon as this alarm went off and they began investigating this matter, the supervisor, Sergeant McCallum, pulled the information regarding that, by Officer Briggs, about the prior burglaries and that suspects may be coming from the Cedar Rapids area. . . . But the state would like to bring forth that there was similar cases being investigated, and because of that fact the car was seized and the perimeter search was done in the area of the car. Not only based on the information that Officer Miller provided, but also because of the intelligence information that Officer McCallum was aware of at the time.

In response, Edgerly's attorney made this objection:

With respect to the other investigations, that's still also hearsay—There's nothing that ties Mr. Edgerly to those investigations. Mr. Edgerly was never charged with anything in those investigations. He

wasn't aware that those investigations were taking place. To bring that information before the jury would do nothing more than prejudice the jury and is in contravention of rule 404(b).

The court ruled:

I will allow the State to go into—briefly with Officer McCallum. The reason that— or part of the reason of seizing the vehicle was based upon—I will allow him to testify about other burglaries in this area and that there was some information indicating that as I understand it, intelligence information, indicating that these people may be—or may be coming from Cedar Rapids. There isn't really anything to show another person was there. There's no evidence with regard to that. And although it's mostly irrelevant, I think it might be— tend to be misleading to the jury with regard to it about Tyson Kidd, but I will allow the information about Cedar Rapids to show for a couple reasons. First to show why the officers took the action they took with regard to it. And also based upon the information they had at that time as to the actions that they took.

McCallum testified:

Q. Now officer, were you aware at the time this information was coming to your attention, of any other investigations that were on-going in the Cedar Falls area of a similar nature?

A. Yes.

Q. And how were you made aware of that information?

A. Through briefing, prior briefings in which I read information provided by investigator Mike Briggs on two particular gas station burglaries that had happened prior to this one.

Q. And were those particular—based on your recollection of the facts of those, did you make any determination that they were similar in nature to what you were investigating at this time?

A. Yes, very similar.

Q. In what ways?

A. First of all they were taking place after the business was closed, you know, during the night time. Secondly, the doors

were pried, possibly in each one by a pry-bar. And in the two prior ones the telephone lines to the alarms had been cut.

Q. And at some point did you become aware of phone lines being cut in this case?

A. Yes, I did.

Q. And when did you become aware of that?

A. It was later in the investigation. I couldn't give you an exact time when, but I became aware of it later.

Q. And was—in the briefing information was their reason to—or another reason to suspect connection to the car that you mentioned about Officer Miller's observations?

A. Yes. In that briefing information we learned that there was a group of burglars who were coming out of the Cedar Rapids area to commit these burglaries of a similar nature.

Q. And so what was—ultimately did you take some action with regard to that vehicle at the scene?

A. Yes. First we had it secured and we had one of the officers, I am not sure if it was Officer Miller or Officer Anderson, do surveillance on it for a period of time to see whether the suspect would come back to the vehicle again. And then after a certain amount of time, an hour or so after we didn't feel anybody would come back, I then had the vehicle impounded and towed to the Cedar Falls Police Department.

The State contends Edgerly failed to preserve error on this issue because he did not renew his stated objection when McCallum testified. The State also contends Edgerly waived any error by failing to object to those portions of McCallum's testimony that arguably exceeded the brevity condition imposed by the court. We disagree.

■ The admissibility of similar burglary evidence was first raised by Edgerly's motion in limine. Ordinarily, any error resulting from the court's ruling on a motion in limine is not preserved unless a timely objection is made when the evidence which was the subject of the motion in limine is offered at trial. *State v. Davis*, 240 N.W.2d 662, 663 (Iowa 1976). If, however, the ruling on the

motion in limine reaches the ultimate issue of admissibility, it is a final ruling and the objection need not be renewed at trial. *State v. Miller*, 229 N.W.2d 762, 768 (Iowa 1975).

■ Our review of the court's ruling indicates that it was intended to accomplish more than the protection from prejudicial references generally contemplated by a motion in limine. The ruling expressly admitted testimony regarding other burglaries in the Cedar Falls area and their Cedar Rapids connection. Edgerly was therefore not required to renew his objection at trial to preserve error on this issue.

■ We are also unable to reconcile the State's waiver argument with the record. The State's description of McCallum's anticipated testimony included specific details of two other burglaries. Edgerly's objection was clearly directed at *any* evidence concerning other burglaries. The court's ruling expressly permitted reference to the prior burglaries. Our reading of the court's brevity condition indicates it did not, as the State suggests, prohibit testimonial reference to details of other burglaries. We conclude Edgerly did not waive error by failing to object McCallum's testimony about similar details of other burglaries. Because error, if any, was preserved, we are required to address the merits of Edgerly's challenge to the admission of McCallum's testimony.

■ As the court's ruling indicates, McCallum's testimony was admitted to explain the responsive conduct of investigating officers and their decision to seize the Geo. Responsive conduct evidence is admissible over a hearsay objection if it explains the conduct itself and it is relevant to some aspect of the State's case. *State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990)(citing *State v. Hollins*, 397 N.W.2d 701, 705–06 (Iowa 1986)). Even if the condition of relevancy is met, such evidence may be excluded if its probative value is outweighed by its prejudicial effect. Iowa R. Evid. 403; *State v. Harmon*, 238 N.W.2d 139, 144–45 (Iowa 1976).

■ With well established exceptions, evidence of crimes other than the one with which the defendant is charged is inadmissi-

ble. *State v. Oppedal,* 232 N.W.2d 517, 520 (Iowa 1975) (citing *State v. Fetters,* 202 N.W.2d 84, 91–92 (Iowa 1972)); *State v. Wright,* 191 N.W.2d 638, 639–40 (Iowa 1971). This rule has been applied in the context of evidence of crimes committed by someone other than the defendant. *State v. Oppedal,* 232 N.W.2d at 520 (evidence of contemporaneous crime committed by another person was irrelevant and highly prejudicial); *State v. McCarty,* 179 N.W.2d 548, 550 (Iowa 1970) (evidence as to acts, transactions, or occurrences to which accused is not a party or is not connected is inadmissible because of its prejudice). The rationale for exclusion of such evidence in this context is the absence of relevance and its potential for improper consideration by the jury. *State v. Goodson,* 516 N.W.2d 30, 33 (Iowa App.1994) (citing *State v. Aricivia,* 495 N.W.2d 364, 367 (Iowa App.1992)).

■ Although similar burglary evidence and its Cedar Rapids connection may have explained the responsive conduct of investigating officers, its probative value has been overstated. Edgerley was linked to the Geo because he possessed its keys. Seizure of the Geo was merely a fact incidental to proof of this contention. Additional evidence explaining the reasons for its seizure was of dubious necessity. McCallum's references to the similarity of this and other burglaries and intelligence reports implicating people from Cedar Rapids provided an inferential link between Edgerly, the red Geo, and similar burglaries that could not be accomplished based on other evidence in the record. It also permitted the jury to consider irrelevant and prejudicial evidence of other crimes and the unproven assertion that someone from Cedar Rapids was responsible for two similar burglaries. Inviting the jury to speculate as to the relevance of this evidence to Edgerly's guilt clearly exceeded the purpose of its admission. We find the potential for improper use of this evidence required its exclusion and the district court abused its discretion by concluding otherwise.

For the same reasons, we are unable to say the admission of this evidence was harmless error. *See State v. Windsor,* 316 N.W.2d 684, 688 (Iowa 1982)(reversal is not required unless prejudice results from the district court's erroneous evidentiary ruling). We find the State's case, without McCallum's testimony, contained less than overwhelming evidence of Edgerly's guilt. There is a high probability Edgerly's conviction was based on improper consideration of this evidence. Edgerly's substantial rights have been injuriously affected by this error and he is entitled to a new trial. *See State v. Traywick,* 468 N.W.2d 452, 454–55 (Iowa 1991) (test of prejudice for harmless error purposes is whether defendant's rights were injuriously affected).

Our disposition of this issue eliminates the need to consider the remaining issues raised on appeal. Edgerly's conviction is reversed and this case is remanded for a new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**