# IN THE COURT OF APPEALS OF IOWA

No. 15-1606
Filed October 12, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHRISTOPHER CLAY MCNEAL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski (pretrial) and Richard H. Davidson (trial), Judges.

A defendant challenges his willful injury and criminal trespass convictions on speedy-trial grounds. **REVERSED AND REMANDED FOR DISMISSAL.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

We are asked to decide if the State violated Christopher McNeal's right to a speedy trial under Iowa Rule of Criminal Procedure 2.33(2)(b) by selecting a jury within ninety days of filing the trial information but not starting to present evidence until nine days after the deadline. Because we conclude this "start-and-stop" procedure did not satisfy the State's obligation to bring McNeal to trial within the bounds of the rule and the State failed to show good cause for the delay, we reverse McNeal's convictions and remand for dismissal of the trial information.

## I.      Facts and Prior Proceedings

The jury heard the following evidence at McNeal's trial.  Matthew Browning was working in Paul Aleksiak's tool shop the night of February 22, 2015, when his friend, McNeal, showed up.  Browning told McNeal to leave because Aleksiak had not given Browning permission to allow anyone else inside the shop.  Browning continued to "beat on" electric motors with a sledgehammer as McNeal eventually walked out the door.  The next thing Browning remembered: "I came to, and I had a big icicle of blood and drool and tears hanging from my cheeks."

The next day, Browning went to the Jennie Edmundson Hospital, where neurosurgeon John Treves discovered Browning had suffered a skull fracture and an epidural hematoma.  Dr. Treves testified he found "a small divot in the bone where there was a compressive force applied."

Browning testified he later confronted McNeal about what happened and McNeal allegedly told Browning: "You were shaking a hammer at me.  I just beat

you to it." When interviewed by police, McNeal denied any involvement in the assault.

In a five-count trial information filed March 30, 2015, the State charged McNeal with attempt to commit murder, first-degree burglary, willful injury, and two assaults. The original minutes of testimony listed ten potential witnesses, including Dr. Evelyn Reher, M.D.; Tracie Kerns, R.N.; and Dr. Crystal Seluk, D.O. McNeal filed a written arraignment and plea of not guilty on April 20, 2015, in which he demanded his right to a speedy trial under rule 2.33(2)(b). Trial was scheduled for June 9, 2015.

On June 2, the State presented the defense with a written plea offer. On June 9, McNeal appeared before the district court, and defense counsel made a record on McNeal's rejection of the State's plea offer.[1] Defense counsel advised the court his client was demanding a speedy trial and "the ninetieth day would be June 28th. So I guess we would need to slide this in for June 23rd." McNeal confirmed he did not wish to waive his right to a speedy trial: "No sir. I would like to get out as soon as I can." The court continued the trial until June 23.

The next day, June 10, the State filed a notice of an additional witness for Dr. Treves, who was expected to testify concerning Browning's head injury. On June 12, the State again expanded its witness list, filing a notice of five additional witnesses, including minutes of testimony for four additional medical personnel from the Council Bluffs hospital.

---

[1] The cover of the transcript available in our record does not list an assistant county attorney as appearing at the June 9, 2015 hearing, and the fifteen minutes of reported proceedings do not include any statements from the State.

On June 16, the parties appeared for a pretrial conference. The State made an oral motion to continue the trial beyond June 23. The assistant county attorney started by explaining:

> It's my understanding—I wasn't in court here last week, but it was my understanding that there was some record made about the defendant waiving speedy trial and his desire to go to trial. And that I think there was some record made about the offers made to the defendant with regards to resolving this case, as well as another case that he has, which is FECR147758. And so it was our understanding as he came to court last week that we had a plea deal. And then on the 9th of June, pretty much everything fell apart in terms of the defendant wishing to take the plea offer that was made.

The assistant county attorney then represented that the State had been "working since that time to schedule expert witnesses in this case." She told the court the State had been "unable to nail down times" the experts were available. The assistant county attorney said the three doctors the State needed to prove the element of serious injury were unavailable for the June 23 trial date. She specified: "One is in Europe, one is a neurosurgeon and is in surgery next week and can't inconvenience, obviously, the people that need brain surgery, and the other is a radiologist that is unavailable because of work commitments, as well."

The State acknowledged it was late in attempting to schedule the witnesses because of its expectation McNeal would accept its plea offer. The State then proffered what it believed to be a solution to its speedy-trial dilemma: "And so we're just simply asking the court at this time if we could pick the jury on Tuesday, the 23rd. That would effectively toll the speedy trial in this case until such time as the State is able to then schedule those expert witnesses."

The assistant county attorney told the court:

> Unfortunately, as we sit here at this moment, Your Honor, I don't have a date certain for those doctors. I know that Dr. Seluk, the ear, nose, and throat doctor is back from Europe on June 30th, but I've been unable, because she's in surgery this afternoon, to confirm exactly when that means that she is back in the office or would be able to come in and testify.
>
> . . . [W]e're in a little bit of flux in terms of what our schedule is. This is certainly not a situation that the State would normally find itself in or want to find itself in, to be noticing witnesses this late. But because of the representation or understanding that the plea offer was going to be taken, we simply had not noticed or attempted to schedule these witnesses to come in for trial, you know, as of last week.

The defense challenged the State's position:

> We are presented here with a situation where the State has added some witnesses eleven days before the trial starts, and—actually, seven working days before the trial starts. All of these witnesses were known all along, and now the State complains that some of these witnesses are unavailable for trial.

Defense counsel pointed out the State had not issued subpoenas for any of its witnesses, according to EDMS (Electronic Document Management System) records. Counsel confirmed McNeal was asking for his trial to be held within ninety days and then articulated the issue that is before us today: "[T]he legal question then becomes, by picking the jury before—within the ninety and having the trial beyond the ninety, is that still compliant with rule 2.33(2)(b), which says that a defendant must be brought to trial?" Counsel argued it was "a pretext" and "a ruse" to do just part of the trial and then recess until the State's witnesses were available. Counsel contended it was not fair to the defendant to circumvent the speedy-trial demands. He acknowledged "medical personnel are difficult to get to court" but insisted "that's something the State knew about" when it chose to file this case in March.

The assistant county attorney responded:

It's horribly inconvenient to all of these medical professionals just to have to show up on, say, June 9th, where we thought a plea was going to be entered. I think it's a little ridiculous to say that we should have had all witnesses just sitting around, waiting for that time and issuing subpoenas to them when we didn't know if it was going to go to trial or not. That certainly is not an efficient way to try a case.

The district court found "good cause to adjust the trial schedule" based on the State's explanation that "one of the doctors [was] out of the country from June 23rd until June 30th." The court did not believe the State's request was "a ruse or merely a pretext to void Mr. McNeal's speedy-trial rights." The court continued:

I think we need to pick that jury on June 23rd. I think it makes sense to try to let the jury hear all of the testimony at once in some kind of sequential fashion. And if we know that the rest of the doctors or—would be available, I would think by July 7 we really need to get them going July 7, at the very latest. And if there's still a doctor in Europe or one doing surgery or whatever it is, you'll just have to subpoena them and get them here on that day or do without them.

Jury selection started on June 23, but because of prejudicial comments made by another assistant county attorney, the original jury panel was "contaminated" and a new panel had to be convened on June 26. In making a record on June 23, the district court stated: "And as originally planned, testimony and the trial itself will proceed on July 7th." The assistant count attorney asserted: "[T]he State has chosen in all caution to pick that jury on the 26th to make sure we are within the defendant's right to a speedy trial on June 26th when that jury is chosen." Defense counsel then alleged the other prosecutor's comments during voir dire were "a deliberate attempt to poison the panel" and

added he was "pleased" the trial could be "rescheduled consistent with his ninety-day right to speedy trial."

Jury selection restarted on June 26. After the jury was chosen, defense counsel returned to the issue of bifurcating the jury selection from the presentation of the evidence, arguing: "[I]t does in retrospect appear to be a pretext." Counsel contended the State "got a continuance" based on its professional statement that the doctors listed as witnesses were not available to testify but now indicated it only intended to call Dr. Treves, who was added to the State's witness list on June 10.

The assistant county attorney responded: "Obviously, there's ten days between now and trial. I can call the witnesses that are listed on my minutes. I admit I need to give the defense some notice of who those witnesses are." The court then recessed the trial until July 7. Before presenting its case in chief, the State dismissed the two counts of assault.

After hearing from the State's four witnesses, including Dr. Treves as the only medical expert, the jury returned verdicts finding McNeal guilty of willful injury causing serious injury and criminal trespass. On August 21, McNeal filed posttrial motions, alleging, among other things, that his right to a speedy trial was violated by "the tactic of picking a jury within the [ninety]-day speedy-trial time-frame and later taking testimony after the speedy-trial time limit has lapsed." At the September 16, 2015 sentencing hearing, the court stated "there was no intent to circumvent the speedy-trial rule but rather to follow it" and found "the trial was commenced within ninety days."

McNeal appeals, urging four grounds for reversal: (1) the district court erred in its speedy-trial rulings, (2) the State failed to prove the identity of the perpetrator and that McNeal was in immediate possession and control of a dangerous weapon, (3) McNeal's trial counsel was ineffective in not making two evidentiary objections, and (4) the district court erred in allowing the State to show a demonstrative sledgehammer to the jury. Because we reverse on speedy-trial grounds, we need not reach McNeal's three remaining issues.

## II.     Scope and Standards of Review

We review McNeal's claim the State failed to meet its burden to bring him to trial within ninety days for the correction of legal error. *See State v. Orte*, 541 N.W.2d 895, 898 (Iowa Ct. App. 1995). We review a district court's determination the State carried its burden to show "good cause" for the delay for an abuse of discretion. *See State v. Winters*, 690 N.W.2d 903, 907–08 (Iowa 2005). But the district court's discretion to hold a trial beyond the ninety-day deadline is "circumscribed," and we strictly construe the speedy-trial rule in favor of the liberty interest of the accused. *See id.* at 908 (citation omitted); *see also State v. Taylor*, 881 N.W.2d 72, 76 (Iowa 2016).

## III.     Preservation of Error

The State argues McNeal failed to preserve error on his speedy-trial claim by "acquiescing" in the district court's adjournment of the trial after jury selection. The State elevates a statement by McNeal's counsel on June 23 that he was "pleased" that after a prosecutor's prejudicial statements during jury selection, the trial could be rescheduled consistent with McNeal's ninety-day right to a speedy trial. The State also points to the district court's observation in rejecting

McNeal's posttrial motions that it did not recall "any objection raised on [June] 26th as to the court's intent to select a jury and then adjourn."

McNeal argues in reply that he "clearly asserted his right to a speedy trial at the June 16th hearing" and "clearly argued against a bifurcated trial." McNeal contends when the court ruled a bifurcated trial would not violate his speedy-trial rights, the matter was preserved.

We agree with McNeal on the error-preservation issue. On June 16, the district court determined there was "good cause to adjust the scheduling of the trial" and decided it would not violate McNeal's speedy-trial rights to pick a jury on June 23 and start opening statements on July 7. Because the court issued a final ruling on the speedy-trial issue on June 16, McNeal was not required to complain again about the unusual procedure on June 23 or June 26 to preserve error. *See United States v. Brown*, 819 F.3d 800, 822–23 (6th Cir. 2016) (finding defendant's oral objection to violation of speedy-trial act arising from district court's "start-and-stop plan" was sufficient to preserve error); *cf. State v. Edgerly*, 571 N.W.2d 25, 29 (Iowa 1997) (finding defendant was not required to renew objection to evidence if pretrial ruling on motion in limine provided final determination of admissibility). Moreover, defense counsel's statement on June 23 that he was "pleased" to restart voir dire with an untainted pool of prospective jurors did nothing to alter the court's previous order bifurcating the jury selection from the remainder of the trial.

## IV.    Analysis

Not many rules of criminal procedure announce their express purpose. Our speedy-trial rule does.  "It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties."  Iowa R. Crim. P. 2.33(2).[2]  One of the time constraints imposed by rule 2.33(2) is the ninety-day deadline for bringing a defendant to trial:

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within [ninety] days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

Iowa R. Crim. P. 2.33(2)(b).

Under rule 2.33(2)(b), a criminal charge cannot go forward if trial does not commence within ninety days of the State filing the charging instrument unless the State can establish one of three things: (1) defendant waived speedy trial, (2) the delay can be attributed to the defendant, or (3) good cause exists for the delay.  *Taylor*, 881 N.W.2d at 76.  The burden of proving an exception rests entirely on the State, and the defendant is not required to show prejudice as a result of the delay.  *Id.*

In this case, we pursue a two-part analysis.  First, we consider what it means to be "brought to trial" within rule 2.33(2)(b).  Specifically, does holding jury selection within ninety days of the trial information "toll" the speedy-trial time

---

[2] The Federal and Iowa Constitutions both guarantee the right to a speedy trial.  *See* U.S. Const. amend. VI; Iowa Const. art. I, § 10.  Rule 2.33(2) is a more stringent codification of those constitutional rights.  *See Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012).  McNeal does not raise a separate constitutional claim in this appeal.

period, as the prosecutor asserted in the district court, allowing the State's presentation of the evidence to start well after the clock had run without violating the defendant's rights? Or does that "start-and-stop" plan for the commencement of a trial merely pay "lip service" to the purpose of the speedy-trial rule? Second, if McNeal was not effectively "brought to trial" by selecting a jury and then adjourning for eleven days,[3] we consider whether the State established an exception to the speedy-trial rule. Because McNeal demanded speedy trial and the delay was not attributable to him, the only exception in play for the State was "good cause" for the delay.

### A. Bifurcation Circumvented the Speedy-Trial Rule

Turning to the first question, our supreme court has held the phrase "brought to trial" means the time when "the jury is impaneled and sworn." *State v. Jones*, 281 N.W.2d 13, 17 (Iowa 1979) (addressing situation where jury was selected and sworn on May 9 and presentation of evidence began the next day). But as McNeal argues on appeal, this holding "does not contemplate occasions where the jury may be selected only to have trial recessed for an unusually long period of time, with the specific intent of avoiding dismissal."

While Iowa's appellate courts have not addressed the propriety of the bifurcated trial procedure at issue here, federal "appellate courts have consistently condemned attempts by the district courts to 'evade the spirit of the [federal Speedy Trial] Act by conducting voir dire within the statutory time limits and then ordering a prolonged recess with [the] intent to pay mere "lip service" to

---

[3] The opening statements and presentation of the evidence started on July 7, which was eleven days after the June 26 jury selection and nine days after the June 28 speedy-trial deadline.

the Act's requirements.'" *Brown*, 819 F.3d at 810 (second alteration in original) (quoting *United States v. Scaife*, 749 F.2d 338, 343 (6th Cir. 1984) (finding "start-and-stop" procedure violated the spirit of the Speedy Trial Act)); *see also United States v. Crane*, 776 F.2d 600, 601–02 (6th Cir. 1985) (vacating conviction based on speedy-trial violation when voir dire occurred within the time period, but the rest of trial was delayed for two weeks); *United States v. Gonzalez*, 671 F.2d 441, 444 (11th Cir. 1982) (cautioning decision finding no speedy-trial violation was not to be viewed "as a license to evade the [Speedy Trial] Act's spirit by commencing voir dire within the prescribed time limits and then taking a prolonged recess before the jury is sworn and testimony is begun"). Similarly, the California Supreme Court determined a defendant was not truly "brought to trial" where swearing in the jury was a "mere device" to avoid the impact of the speedy-trial requirements. *See Rhinehart v. Mun. Ct.*, 677 P.2d 1206, 1212 (Cal. 1984) (en banc) (dismissing prosecution where jury was empaneled on November 27, the last day of the statutory period, but trial was delayed until December 3).

The time period for bringing McNeal to trial started on March 30, 2015, when the State filed the trial information. The ninety-day window closed on Sunday, June 28, 2015. Trial was set for June 9, but the State did not subpoena any witnesses for that date, believing McNeal would accept its plea offer. On June 9, McNeal appeared before the district court, rejected the plea offer, and declined to waive his speedy-trial right. The court continued trial until June 23. On June 16, the parties appeared for a pretrial hearing, at which the State proposed impaneling a jury on June 23 to satisfy the speedy-trial deadline but

continuing the presentation of evidence until it was able to secure its medical witnesses. The district court accepted the State's proposal—bifurcating the trial between jury selection, which ended up occurring on Friday, June 26, and the remainder of the trial, which commenced on July 7. The evidentiary portion of the trial began nine days after the speedy-trial deadline.

On appeal, the State argues the "relatively brief recess" of eleven days between jury selection and presentation of the evidence did not "convert good-faith efforts to empanel a jury within the speedy-trial period into a nefarious attempt to circumvent speedy-trial requirements." The State points to *Gonzalez*, 671 F.2d at 443–44, and *Scaife*, 749 F.2d at 343, where recesses of similar length did not result in dismissals. But the procedural postures in those cases differ from McNeal's situation.

In *Gonzalez*, a jury was picked on Thursday, November 13, the last day of the speedy-trial period; the trial court offered to begin opening statements and testimony the following Monday, November 17, but indicated, thereafter, a previously scheduled judicial conference would require a recess until Monday, November 24. 671 F.2d at 444. Gonzalez expressed a preference for starting on November 24 to avoid splitting up the evidence in a relatively short trial. *Id*. Similarly, in *Scaife*, the appeals court decided the district court did not intend "to evade the spirit" of the Speedy Trial Act by conducting voir dire within the statutory time limits and then ordering a eleven-day recess so the judge could attend a mandatory judicial conference. 749 F.2d at 343. Moreover, both Scaife and his attorney signed a written waiver of the right to speedy trial. *Id*.

By contrast, in the instant case, McNeal consistently demanded a speedy trial; no offer was made to start the presentation of evidence on the Monday after Friday's jury selection; it was the district court, not McNeal, who expressed a desire for the jury to hear "all of the testimony at once in some kind of sequential fashion"; and the reason for the recess was not judicial business but the State's failure to subpoena any medical witnesses for a trial date within the ninety-day speedy-trial period.

Under these circumstances, we conclude McNeal's right to a speedy trial under rule 2.33(2)(b) was not satisfied by selecting a jury within the rule's time-frame but postponing the actual presentation of evidence until nine days after the speedy-trial deadline had expired. Contrary to the State's position on appeal, we do not find the length of the recess to be insubstantial.[4]  *See State v. Hines*, 225 N.W.2d 156, 159 (Iowa 1975) ("[W]e are unimpressed that the [then sixty]-day limitation was exceeded by only [fifteen] days."); *see also State v. Miller*, 637 N.W.2d 201, 205 (Iowa 2001) ("[A] procedural deadline cannot be escaped merely by showing it has been violated 'only a little bit.'" (citation omitted)). Nor do we believe the court's goal of avoiding piecemeal presentation of the evidence justified its decision to bifurcate. *See Ennenga*, 812 N.W.2d at 705 (explaining under rule 2.33(2)(a), the length of the delay and the lack of prejudice have no bearing on whether a trial information was timely "found").

The speedy-trial rule serves several purposes, including relieving "an accused of the anxiety associated with a suspended prosecution," providing

---

[4] We are also concerned that the substantial length of time between selecting jurors and beginning the presentation of evidence runs the risk of exposing those jurors to extrajudicial information about the case.

"reasonably prompt administration of justice," and preventing the harm of "possible impairment of the accused's defense due to diminished memories and loss of exculpatory evidence." *Id.* at 703 (citation omitted). None of these purposes is fulfilled by the half-measure of selecting a jury followed by a suspension of the criminal proceedings for days or weeks while the State secures its witnesses. The anxiety associated with the prosecution would not subside with the selection of the jury, the administration of justice would be postponed, and the possible impairment of the defense would continue until the evidence was presented. To decide McNeal was "brought to trial" when the jury was selected but no trial was forthcoming for eleven days would render illusory his right to a speedy trial within ninety days.

### B. No Good Cause Shown

Because McNeal was not brought to trial within ninety days of the trial information, we must turn to the question of good cause for the delay. "The good-cause test under our speedy-trial rules relies only on one factor: the reason for the delay." *Taylor*, 881 N.W.2d at 77. But the reason for the delay is not "evaluated entirely in a vacuum." *State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980) (explaining shortness of the period, failure of the defendant to demand a speedy trial, or absence of prejudice are legitimate considerations only insofar as they affect the strength of the reason for delay). If, as here, the defendant has demanded a speedy trial, a stronger reason for the delay is needed to constitute good cause. *See Miller*, 637 N.W.2d at 205.

On appeal, the State contends it had good cause for a continuance beyond the ninety-day speedy-trial deadline because it was "unable to procure a

critical fact witness." The district court record does not support this contention. At the June 16 hearing, the State told the court "five to seven doctors" were named in the minutes and "the three that we need" to prove the element of serious injury were "unavailable" for the trial scheduled to start on Tuesday, June 23. The State said Dr. Seluk planned to be in Europe from June 23 until June 30—that information formed the basis of the court's decision to recess the trial until July 7.[5] The State also asserted a neurosurgeon and a radiologist it planned to call as witnesses were unavailable in the "next week" because of "work commitments."

The assistant county attorney's broad and general assertion on June 16 that the essential doctors were unavailable as witnesses at any time during the "next week" did not satisfy the State's burden to show good cause for delaying the presentation of evidence until July 7. *See Winters*, 690 N.W.2d at 909 (finding "bare assertion by the prosecutor" that depositions could not be completed before expiration of the speedy-trial deadline was insufficient to show good cause). "[G]ood cause to avoid speedy trial must be rooted in facts, not conclusions." *Taylor*, 881 N.W.2d at 77. This situation differs from *Petersen*, where the supreme court found good cause for a fourteen-day delay beyond the speedy-trial deadline when, among other reasons, the State had requested to continue one trial date based on a "material expert witness" being on vacation out of state. *See* 288 N.W.2d at 334–35. The court noted "a less serious

---

[5] As it happens, the State did not call Dr. Seluk to testify, but relied solely on the testimony of Dr. Treves, who was not noticed as a witness until June 10, one day after McNeal rejected the State's plea offer on the original trial date.

reason" sufficed to show good cause because Petersen had not demanded a speedy trial. *Id.* at 335. Here, McNeal consistently demanded a speedy trial.

It was evident from the professional statements of the assistant county attorney on June 16 that the State was scrambling to schedule its medical witnesses for trial after learning McNeal rejected its plea offer on June 9. The State had not issued subpoenas for any of the doctors for the June 23 trial date. Nor had the State identified a "date certain" when any of them would be available to testify. Instead of taking the necessary measures to secure its witnesses for trial within the ninety days provided by the rule, the State instead proposed the more facile remedy of picking a jury on June 23 and then "tolling the speedy trial in this case until such time as the State is able to schedule those expert witnesses." Perhaps because the State mistakenly believed it could satisfy its obligation to bring McNeal to trial under rule 2.33(2)(b) by empaneling a jury within the ninety-day deadline, it did not advance an adequate reason for delaying the presentation of evidence. Accordingly, we reverse McNeal's convictions and remand to the district court for dismissal of those charges. *See Taylor*, 881 N.W.2d at 80.

**REVERSED AND REMANDED FOR DISMISSAL.**