# IN THE COURT OF APPEALS OF IOWA

No. 17-1872
Filed April 3, 2019

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**KURT ALAN OLSON,**
　　　　Defendant-Appellant.

_____

　　　　Appeal from the Iowa District Court for Tama County, Mary E. Chicchelly, Judge.

　　　　Kurt Alan Olson appeals from his convictions for two counts of indecent contact with a child and three counts of assault with intent to commit sexual abuse. **AFFIRMED.**

　　　　Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC, Cedar Falls, for appellant.

　　　　Thomas J. Miller, Attorney General, and Katie Krickbaum, Assistant Attorney General, for appellee.

　　　　Considered by Tabor, P.J., Bower, J., and Blane, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Kurt Alan Olson appeals from his convictions for two counts of indecent contact with a child and three counts of assault with intent to commit sexual abuse. He contends the jury's verdicts are not supported by sufficient evidence and the district court erred in not granting him a new trial based on his weight-of-the-evidence and evidentiary claims. Finally, he contends his trial counsel was ineffective. We affirm.

## I. BACKGROUND FACTS AND PRIOR PROCEEDINGS

Olson began dating Lindsay in 2010. Lindsay has two children, E.R. and a younger son. When Lindsay and Olson first began dating, E.R. was eight years old. Lindsay, E.R., and E.R.'s younger brother would spend weekends at Olson's home. At trial, E.R. testified that when she was eight years old, Olson began touching her in a sexual manner.

In October 2016, E.R. confided in her grandmother that Olson had been touching her in a sexual manner for several years. E.R.'s grandmother encouraged her to tell a school counselor. E.R. spoke with her school counselor, Carrie Elsinger, a mandatory reporter, who contacted the Iowa Department of Human Services (DHS). Law enforcement investigated and charged Olson with two counts of indecent contact with a child and three counts of assault with intent to commit sexual abuse.

E.R. testified at trial and described the following incidents: When she was eight years old, she was sitting on a couch in Olson's home, and Olson sat down next to her. He started "grazing his hand against [her] leg, and he got close to [her] private area," at which point E.R. moved away. Olson did it again, and E.R.

got up; Olson told E.R. "it was okay" and she "needed to just sit back down." E.R. testified she was scared and went to the bathroom and cried. She told her mother about the incident the next day, but her mother said Olson was "just trying to help" her.

On another occasion, when E.R. was ten years old, Olson was in his garage grilling with Lindsay and E.R. He asked Lindsay to go inside the house and get something for the grill. He then "told [E.R.] to come closer to him." E.R. testified, "I was scared and I didn't really want to. And then he made me give him my hand." He told E.R. to close her eyes and he then "put my hand by his private area and he made me touch him that way." He also told E.R. he was not wearing underwear. E.R. testified she told her mother about this incident but Lindsay did not do anything.

When E.R. was twelve, she and her brother were sleeping on the couch bed at Olson's home. E.R. had "tucked [a blanket] underneath" her foot "so he wouldn't touch me," but she felt Olson "digging." She testified she "moved really close and . . . put my body kind of into a ball and . . . tucked my blanket underneath more," but Olson got closer. She testified she said, "No, stop, this isn't okay." Olson got up and responded, "Okay, fine, goodnight drama queen."

E.R. also testified to repeated incidents of "wrestling"—Olson would wrestle with E.R. and touch her inappropriately. She testified,

> [H]e would like attack me and he would try to get on top of me and then he would like try like thrash around . . . . [T]hen he would stick his hand through my shirt sleeve and then into my bra and then he would touch my chest that way.

On cross-examination, E.R. testified her mom was often present during the wrestling but Olson kept the touching from her view or E.R. "figured that she knew so she would have said something, but she didn't." E.R. also testified Lindsay was sleeping in a blue chair by the couch while the incidents on the couch happened. E.R. clarified after cross-examination that Olson only touched her genitals, which she called "private parts," over clothing but touched the skin of her breasts.

Sheriff's deputy Detective Bruce Rhoads testified about his interview with Lindsay. Lindsay admitted to him she "knew something was wrong" and that E.R. had told her she was being touched inappropriately. Detective Rhoads testified Lindsay was charged with child endangerment. Lindsay testified she was getting a "deal" in exchange for her testimony in Olson's case. Lindsay admitted that E.R. told her about the incident in the garage but she continued to bring her children over to Olson's house and did not report any incidents to the police.

Kamille Martin, a child and dependent adult abuse protection worker with the DHS testified. She attended an interview of E.R. at the child protection center (CPC) after the allegations came to light. Kristen Kasner, a nurse at CPC, also testified and said that E.R. showed no physical signs of sexual abuse upon examination.

The defense put on evidence from one witness, Ken Hart, a counselor at E.R.'s school. E.R. testified she told Hart about the abuse when she was eight. Hart testified E.R. never reported to him she had been sexually abused; they had only discussed some family issues.

The jury found Olson guilty on all five counts as charged. Olson filed a motion for new trial, which the court denied. Olson appeals.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Olson challenges the sufficiency of the evidence to support the jury's verdicts. "We review challenges to the sufficiency of evidence for correction of errors at law." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). A verdict of guilty will be upheld if supported by substantial evidence. *Id.* "To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004); *see also State v. Schories*, 827 N.W.2d 659, 664 (Iowa 2013) (finding counsel preserved error in identifying the element of the crime for which the State had insufficient evidence by mentioning the elements of the affirmative defense to that element); *State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996) (holding when the motion for judgment of acquittal does not reference the specific elements of the crime challenged, the motion did not preserve the argument for appeal); *State v. Geier*, 484 N.W.2d 167, 170 (Iowa 1992) (error was not preserved when motion for judgment of acquittal did not mention argument that a stun gun was not a "dangerous weapon"). The State contends Olson failed to do this.[1]

---

[1] The jury was instructed that in order to prove indecent contact with a child, the State had to show on two specified occasions, Olson "fondled or touched the inner thigh, groin, buttock, anus or breast" of E.R. or "touched the clothing covering the immediate area" of the same "with the specific intent to arouse or satisfy the sexual desires of the defendant or" E.R. In order to prove assault with intent to commit sexual assault, the State had to show on three specified occasions, Olson:
> committed an assault on [E.R.] which includes any of the following:
> > a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

At trial, Olson made the following motion for judgment of acquittal: "A greater amount of evidence favors the defense rather than the State, even when the Court is required to view the evidence in the light most favorable to the State." The court disagreed and denied the motion: "[T]he Court does find that there is substantial evidence within the record to support the State's charges herein." On appeal, Olson complains, ""E.R.'s claims are contradictory, lack details sufficient to support the allegations made, suggest the incidents occurred directly in the presence of others, and are directly refuted by others." His trial motion did not mention contradictory claims, a lack of sufficient detail, or contrary direct evidence in the record. Accordingly, the motion did not preserve these arguments for appeal.[2]

## B. Motion for New Trial

Following the verdicts, Olson filed a motion for new trial under Iowa Rule of Criminal Procedure 2.24(2). Appellate review of a motion for new trial depends on the grounds of the motion. *State v. Lopez*, 633 N.W.2d 774, 781 (Iowa 2001). We review a discretionary ground for an abuse of discretion and a legal question for legal error. *Id.* at 781–82. "A district court should grant a motion for a new trial

---

b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

And the State had to show Olson "did so with the specific intent to commit sexual abuse against the will of [E.R.]."

[2] An exception to this error preservation rule exists where "the record indicates that the grounds for a motion were obvious and understood by the trial court and counsel." *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005) (finding all parties "understood that the grounds for the motion for judgment of acquittal targeted the insufficiency of the evidence to support the first element of assault" relating to whether or not the defendant choked the witness). Here, the statements of counsel were too vague and general to preserve error.

only in exceptional circumstances." *State v. Ary*, 877 N.W.2d 686, 705 (Iowa 2016).

1.     Weight of the evidence

Iowa Rule of Criminal Procedure 2.24(2)(b)(6) allows a defendant to request a new trial when the verdict is "contrary to law or evidence." The rule means "contrary to the weight of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). Where the evidence "preponderates heavily" against the verdict, the district court should grant a new trial based on the weight of the evidence to avoid a miscarriage of justice. *Id.* at 658–59. The weight-of-the-evidence standard requires the district court to independently "weigh the evidence and consider the credibility of witnesses." *Id.* at 658. On appellate review, we do not re-weigh the evidence or judge the credibility of the witnesses in our consideration of the denial of a motion for new trial—our review is limited to the exercise of discretion by the trial court. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). To prevail, the moving party "must show that the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 202.

In his motion for new trial, Olson contended the verdict was "contrary to law or evidence." *See* Iowa R. Crim. P. 2.24(2)(b)(6). The court denied the motion:

> [I]n ruling on Defendant's Motion for New Trial and relative to the Motion in Arrest of Judgment, the Court considers testimony of the witnesses, their credibility, and finds a greater weight of credible evidence supports the State. The jury was properly instructed with regard to the law. There is no indication by the verdict that the jury ignored any critical evidence, and the jury's verdicts are supported by the weight of the evidence. . . . [T]he court does therefore order that the . . . Motion for New Trial . . . [is] denied.

On appeal, Olson assails E.R.'s testimony as inconsistent and argues the weight of the evidence is contrary to the jury's verdicts. The court's explanation of its decision indicates it applied the correct legal standard—it considered the credibility of the presented witnesses and testimony and not just the sufficiency of the evidence to convict. A verdict is contrary to the weight of the evidence "only when a greater amount of credible evidence supports one side of an issue or cause than the other." *Ary*, 877 N.W.2d at 706 (citation omitted). The court weighed the evidence and determined more credible evidence rested on the side of conviction. This is not a case where the evidence preponderates heavily against the verdicts. Olson has not shown the court exercised its discretion on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable. It determined E.R. was a credible witness and no other evidence in the record, notwithstanding some contradictions, militates against that conclusion. We discern no abuse of discretion in the court's ruling on Olson's post-trial motions.

2. Evidentiary rulings

a. "Bad person" comment

Olson next contends the district court erred in admitting the portion of the CPC recorded interview where E.R. recounts a conversation she had with her grandmother wherein her grandmother opined Olson is a "bad person." Olson moved in limine to exclude any mention of prior crimes or bad acts. *See* Iowa R. Evid. 5.404(b). The trial court granted the defense limine motion. The prosecutor then redacted the CPC recording but did not remove the portion where E.R. related her grandmother opined that Olson is a "bad person." The State provided defense counsel a copy of the redacted exhibit of the recorded interview before trial; but

defense counsel did not watch the redacted recording and did not object to its admission. This, the district court ruled, constituted a waiver of the issue.

We review most evidentiary rulings for an abuse of discretion. *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). The district court abuses its discretion when it exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* (quoting *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003)). "Ordinarily, any error resulting from the court's ruling on a motion in limine is not preserved unless a timely objection is made when the evidence which was the subject of the motion in limine is offered at trial." *State v. Edgerly*, 571 N.W.2d 25, 29 (Iowa Ct. App. 1997). Here, counsel did not review the redacted recording before trial and permitted it to be admitted without objection. As such, the evidentiary question was waived. The district court did not abuse its discretion.

We also agree with the State that the grandmother's comment that Olson is a "bad person" did not violate the defense motion in limine as it does not constitute "[e]vidence of other crimes, wrongs, or acts [which are] not admissible to prove the character of a person." Iowa R. Evid. 5.404(b). The grandmother's statement to E.R. did not testify to crimes, wrongs, or other acts. The grandmother's statement was a bald opinion without underlying specifics that is not prohibited by the rule. The trial court did not abuse its discretion in overruling the belated motion.

b. Vouching testimony

Olson next contends certain statements by Kamille Martin constituted improper vouching for E.R.'s credibility. Martin was present when E.R. was interviewed at CPC. Martin testified E.R. answered her questions without

hesitation, "easily gave details," and gave consistent statements. Martin also described how E.R. had a difficult time describing her private parts, which Martin said was "not uncommon" for girls. When asked whether the amount of detail E.R. provided was normal, Martin replied that it depended on the age of the child and the traumatic nature of the events. She further stated, "I mean, this has an effect on people—on children—and usually things stick in their minds like what they were doing at the time, . . . even sometimes exact clothes they were wearing, they're able to give you those details because it was a traumatic experience." Martin also testified about Lindsay and her "limited" involvement in the process. She stated, "In my experience . . . , parents usually appear more protective, don't make statements about not believing their child. They offer as much information as they can because they want to protect their children. . . . [Lindsay] did not appear protective."

In *State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014), our supreme court reiterated the rule that an expert witness may not comment on the credibility of a victim of sexual abuse. It is an abuse of discretion for a district court to allow such testimony. *Dudley*, 856 N.W.2d at 677. In the child-sexual-abuse context, the expert witness may not testify that a child witness's physical manifestations or symptoms are consistent with sexual-abuse trauma because this indirectly vouches that the victim is telling the truth. *Id.* "It is the jury's function to determine if the victim is telling the truth, not the expert witness's." *Id.* But the court also stated in *Dudley*: "In *Myers*,[3] we set forth the legal principles regarding expert

---

[3] *State v. Myers*, 382 N.W.2d 91 (Iowa 1986).

testimony in child sexual abuse cases. We stated 'experts will be allowed to express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children.'" *Id.* at 676 (citation omitted).

> We have consistently followed *Myers* in our subsequent case law. We have permitted an expert witness to testify regarding the "typical symptoms exhibited by a person after being traumatized." We held this testimony was admissible because it did not directly comment on whether the victim at issue had symptoms consistent with "rape trauma syndrome." In a later case, we allowed expert testimony to explain to a jury why children victims may delay reporting their sexual abuse. Again, the expert witness avoided commenting directly on the child at issue and only testified generally about victims of sexual abuse.

*Id.* (citations omitted).

Olson successfully moved in limine to exclude opinions on E.R.'s credibility. During Martin's testimony, Olson also entered a trial objection, and the court ruled, "[T]he objection will be sustained only to the extent that the witness can testify as to personal observations." Olson subsequently objected to the statements described above, and the court overruled the objections.

On our examination of the trial record and the above statements, we find no abuse of discretion in the court's rulings. Nothing Martin said can be construed as an expert vouching for E.R.'s credibility—Martin gave her observations of E.R.'s statements, including that they were fluent, detailed, and consistent. She did not testify any of her observations were consistent with sexual abuse trauma. The purpose of expert witness testimony is to assist the jury in understanding the child victim's "seemingly unusual behavior." *Id.* at 675. While Martin did comment generally that children can remember a high level of detail surrounding a traumatic event, she did not testify E.R.'s recollections or grain of detail were consistent with

a child sexual abuse victim. Martin also testified E.R.'s difficulty using words to describe her private parts were normal for girls, not specifically child abuse victims. Martin's statements about Lindsay do not constitute vouching at all, as they did not present an opinion on E.R.'s credibility. Therefore, the court did not abuse its discretion in allowing this testimony.

Olson also now challenges certain statements made by Detective Rhoads as impermissibly bolstering E.R.'s credibility. But Olson made no contemporaneous objection at trial; therefore, he waived this issue for appeal. *See Edgerly*, 571 N.W.2d at 29.

### c. Lindsay's plea agreement

Olson complains he was not permitted to query Lindsay on the details of her plea agreement. At trial, Olson's counsel elicited testimony from Lindsay about the charges she was facing and the admission that she had been offered a "deal" in exchange for her testimony but was not allowed to go into the possible penalties discussed. The court sustained the State's objection. Similarly, when questioning Detective Rhoads, Olson's counsel was not allowed, based on a sustained relevance objection,[4] to inquire whether Lindsay's charges were felony-level offenses. This, Olson now asserts, impeded his ability to demonstrate the issue of bias in Lindsay's testimony.

In general, a defendant is "permitted wide latitude in seeking to show bias of an alleged accomplice who testifie[s] for the prosecution." *State v. Armento*,

---

[4] Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the fact "is of consequence in determining the action." Iowa R. Evid. 5.401.

256 N.W.2d 228, 229 (Iowa 1977). And, "where the State has gone so far as to enter into a bargain with the accomplice the defendant must be allowed to inquire about the terms of the bargain so that the jury may better understand the possible motivations of the accomplice." *State v. Donelson*, 302 N.W.2d 125, 131 (Iowa 1981). However, here, Lindsay testified she did not yet have a deal but that a deal was contingent upon her testifying. Lindsay's knowledge of the penalties involved with a deal that had not yet been struck could not be probative of her bias. Olson was allowed to establish potential bias for Lindsay's testimony against him. Further, Olson did not establish a record by an offer of proof to show that Lindsay, in fact, knew what penalties she faced. We find no abuse of discretion in the court's ruling.

### d. Other issues

Olson raises two other issues—or rather, asserts they are "matters that would have been appropriate for the trial court to address" in reviewing his motion for new trial: (1) he complains the "allegations were a moving target" and (2) evidence was submitted about an incident that was not charged. Olson did not raise either issue below, so they are not preserved for our review. *See State v. Horsey*, 180 N.W.2d 459, 460 (Iowa 1970). Olson contends each of these individual errors cumulatively amount to error justifying a new trial. We disagree, and it is not a close case; the cumulative effect of these alleged errors does not show Olson was denied a fair trial. They do not constitute the "exceptional circumstances" under which a court should grant a new trial. *Ary*, 877 N.W.2d at 705.

### C. Ineffective Assistance of Counsel

Olson next raises claims of ineffective assistance of counsel. "Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules." *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). To prevail on appeal, Olson must show by a preponderance of the evidence counsel breached an essential duty and prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). As our default mode, we preserve ineffective-assistance claims for postconviction-relief (PCR) actions. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Preservation to develop the record is preferred when the challenged action or inaction by counsel may implicate trial tactics. *Id.*

#### 1. Jury instructions

The jury was given instructions on the elements of each offense, but they did not include a separate instruction defining "sexual abuse" or "sex act." Olson's trial counsel did not request such instructions be included or raise an objection to their absence, which Olson now contends was ineffective assistance. The State urges us to resolve this issue by finding counsel did not fail in an essential duty but admits there may have been strategic reasons for this decision. The record is inadequate to assess this claim, so we preserve it for possible PCR proceedings.

#### 2. Cumulative ineffectiveness

Finally, Olson contends the cumulative ineffectiveness of his trial counsel is sufficient to warrant reversal of his conviction on ineffective-assistance-of-counsel grounds. He faults his counsel for failing to object to the jury instructions, the uncharged bad act evidence, the redacted CPC video, and Detective Rhoads's

alleged vouching testimony.  Again, the record is inadequate to assess the claims, so they must be preserved for PCR proceedings.

### III. CONCLUSION

We find Olson failed to preserve his sufficiency-of-the-evidence argument. The district court did not abuse its discretion in denying his motion for new trial as the verdict was not against the weight of the evidence.  The court did not abuse its discretion in any preserved evidentiary ruling.   The ineffective-assistance-of-counsel claims are preserved for PCR proceedings.

**AFFIRMED.**